Hon. Thomas J. BLILEY,
Jr., et al., Plaintiffs,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ. A. No. 92–0422.

United States District Court,
District of Columbia.

May 20, 1992.

Theodore B. Olson, Terence P. Ross, Gibson, Dunn & Crutcher, Washington, D.C., for plaintiffs.

Jesse P. Goode, Asst. Corp. Counsel, Washington, D.C., for defendants.

David A. Clarke, Washington, D.C., for movants to intervener.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs are four members of the U.S. House of Representatives with oversight responsibility for the District of Columbia, who seek a declaratory judgment that a local statute, the Assault Weapon Manufacturing Strict Liability Act of 1990 ("the Liability Act"), D.C. Act. 8–289, is invalid for failure to comply with the Home Rule Act, D.C.Code § 1–201 et seq. The Home Rule Act provides that enactments of the D.C. Council do not become law until Congress has had a chance to review them for thirty legislative days. *See* D.C.Code 1–233(c)(1). Because the date on which the Liability Act was to become effective was delayed by the D.C. government as the result of negotiations with Congress for increased funding, plaintiffs contend that Congress was never given its full thirty legislative days to review the Act. The issues are currently before the Court on defendants' motion to dismiss, which has been briefed by all parties and fully argued.[1]

## I

The procedural history of the Assault Weapon Manufacturing Strict Liability Act

---

1. The Court has allowed the Committee FOR Strict Liability, which sponsored a referendum, discussed *infra,* relating to the Act, to intervene as defendant and argue in support of the motion.

of 1990 is quite complicated. The Act, which holds manufacturers, dealers, and importers of assault weapons strictly liable for all bodily injuries and death resulting from the firing of such weapons, was passed by the D.C. Council and signed by then-Mayor Marion Barry in December 1990. Before an act of the Council can take effect, however, the Home Rule Act requires that the Chairman of the Council transmit the local legislation to Congress for its review. If Congress does not disapprove the legislation passed by the Council within thirty legislative days, the local legislation then becomes law. *See* D.C.Code § 1–233(c)(1). The Chairman of the Council, defendant John Wilson, transmitted the Liability Act to Congress on January 11, 1991, thereby initiating the required review period.

Before the review period ended—which was to happen on March 6, 1991—Mayor Kelly and the Council arranged with Congress a political solution to the District's urgent need for additional funding. In negotiations with District leaders, Congress gave assurances that funds would be appropriated for the District if the Liability Act was repealed. The District officials were agreeable. Accordingly, the Council enacted an emergency repealer of the Liability Act on February 15, 1991, as the first step in the repeal process. *See* D.C.Act 9–1. Because this was emergency legislation, it took effect immediately, without the preliminary review by Congress necessary for other D.C. legislation; but its temporary suspension of the Liability Act was effective for only 90 days. *See* D.C.Code § 1–229(a). Thus, while the emergency repealer was still in effect, the Council extended the suspension of the Liability Act by enacting a temporary repealer on March 15, 1991. *See* D.C.Act 9–8. This temporary repealer, which became law on expiration of the thirty-day congressional review period on May 15, 1991, had a maximum effect of 225 days. On May 17, 1991, the Council enacted a permanent repealer of the Liability Act, D.C.Act 9–32, and Chairman Wilson transmitted the permanent repealer to Congress on May 23, 1991. The permanent repealer was also subject to Congress' thirty-day review period.

At this point in the process, the arrangement for funding and repeal took an unexpected course. Before the thirty-day review period ran on the permanent repealer, a referendum was presented to the D.C. Board of Elections and Ethics to reject the permanent repealer and thereby to preserve the Liability Act. Pursuant to D.C.Code § 1–282(b)(1), Congress ceased its consideration of the permanent repealer on being informed that the referendum had been initiated, and returned the permanent repealer to the Chairman of the Council pending the vote on the referendum by citizens of the District. On November 5, 1991, the District voters approved the referendum rejecting the permanent repealer. This left the temporary repealer, which was still in effect at the time of the vote on the referendum, in place. It was to expire on December 25, 1991. In the mean time, Congress took no action opposing or approving the Liability Act.

Although Congress did not disapprove the Liability Act by March 6, 1991, the date on which the initial thirty-day review period ran, and took no other official action indicating its disapproval of the Act at any time, plaintiffs challenge the validity of the Liability Act, contending that because the emergency repealer was passed before the thirty-day review period ran on Congress' consideration of the Liability Act, Congress never really had thirty legislative days to consider the legislation before March 6, 1991. According to the plaintiffs, once the 90–day emergency repealer was enacted, Congress properly ceased its consideration of the Liability Act. As a result, plaintiffs submit that, after the referendum was passed rejecting the repealer, the Liability Act should have been transmitted again to Congress for the thirty-day review required by the Home Rule Act.

II

As an initial matter, because plaintiffs allege in the amended complaint that they have been deprived of a right guaranteed them under the Home Rule Act, they have

standing. The Home Rule Act reserves to Congress two separate means of overseeing legislation passed by the D.C. Council. First, Congress retains its authority under the Constitution to enact "legislation for the District on any subject ... including legislation to amend or repeal any law in force in the District ... and any act passed by the Council." D.C.Code § 1-206; U.S. Const. art. I, § 8, cl. 17. It is undisputed that, regardless of the outcome of this suit, Congress could enact legislation repealing the Liability Act directly. Indeed, plaintiffs introduced such legislation on November 5, 1991, the day the referendum passed. *See* H.R. 3712, 102nd Congress, 1st Session, 137 Cong.Rec. H9392-03 (November 5, 1992).

What is at issue in this case is a second method available to Congress to oversee District legislation, namely, the provisions of D.C.Code § 1-233 which give Congress thirty legislative days to review D.C. legislation *before* it takes effect. In order for Congress to conduct such review, the Chairman of the D.C. Council must first transmit a proposed act to Congress. *See* D.C.Code § 1-233(c)(1). Here, plaintiffs suggest that, as members of Congress, they were deprived of their right under the Home Rule Act to consider the Liability Act before it became law, both when it was initially passed—because of the subsequent passage by the Council of the emergency repealer before the thirty days had passed—and after the referendum effectively re-enacted the Liability Act, because Chairman Wilson never retransmitted the Act to Congress. The fact that plaintiffs have another potential remedy available to them in Congress, namely, passage of legislation repealing the act, does not cure the injury they allegedly suffered in having been deprived of their rightful opportunity to consider the Liability Act *before* it took effect. *See Riegle v. Federal Open Market Committee*, 656 F.2d 873, 877-79 (D.C.Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981).

Because plaintiffs in this case are congressional representatives, however, standing is not the only preliminary consideration that must be resolved before reaching the merits. *See Riegle*, 656 F.2d at 879. In *Riegle*, this Circuit held that "[w]here a congressional legislator could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, this court should exercise its equitable discretion to dismiss the legislator's action." *Id.* at 881. This doctrine of remedial discretion allows the Court "to refrain from hearing cases which represent the most obvious intrusion by the judiciary into the legislative arena." *Id.*

■ In this particular case, a number of considerations—many of which are discussed above in relation to standing—indicate that it would be inappropriate, based on the current record,[2] for the Court to exercise its remedial discretion. Although plaintiffs may in fact be opposed to the Liability Act, they are not attempting by this lawsuit to invalidate that Act. They simply seek a declaratory judgment that unless Chairman Wilson transmits the Act to Congress for consideration, the requirements of the Home Rule Act have not been fulfilled. The best that plaintiffs can hope for by such a result would be that Chairman Wilson will then transmit the Act. Any invalidation of the Act could necessarily be achieved only by a subsequent joint resolution of Congress. *See* D.C.Code § 1-233(c)(1) In that sense, this case does not present a situation in which a congressional plaintiff is challenging "the actions of those acting pursuant to a statute which could be repealed or amended by his colleagues, or where he alleges an injury which could be substantially cured by legislative action." *Riegle*, 656 F.2d at 881. Not only is the D.C. government allegedly acting contrary to a statute in treating a law as enacted before Congress has had its required thirty-day review, but the injury claimed by the plaintiffs cannot be cured by subsequent legislation. Subsequent legislation could only repeal the Liability Act—a result not sought in this action—not give the plaintiffs back their right to prior approval of it.

**2.** *See infra* note 5.

## III

■ As to the merits of the case, the issues come down to the simple question of whether or not the enactment of the emergency and temporary repealers tolled the thirty-day congressional consideration period, and thereby required that the Act be resubmitted before it could take effect. This precise issue was resolved by the D.C. Court of Appeals in *Atkinson v. District of Columbia Board of Elections & Ethics,* 597 A.2d 863 (D.C.1991). In *Atkinson,* the Court of Appeals held that the emergency repealer did not toll Congress' thirty-day consideration period, and that therefore the Liability Act took effect on the completion of the initial thirty-day period. *See Atkinson,* 597 A.2d at 869. The Court of Appeals based its holding on the plain language of the Home Rule Act and subsequent amendments. In particular, the court found that "the only circumstances that can prevent the act from becoming law are the passage of a joint resolution by Congress under D.C.Code § 1–233(c)(1) or the filing of a valid referendum petition under D.C.Code § 1–282(b)(1)." *Id.* at 867. Because the Home Rule Act does not provide that the passage of an emergency repealer also tolls the thirty-day consideration period, the clear implication is that it does not—a conclusion that is bolstered by the limited duration of emergency and temporary repealers. The court found support for its holding in the fact that, in the case of a referendum, the statute specifically provides the means by which Congress is to be notified that the consideration period has been tolled, and further directs Congress on receiving such notice "to return such act or portion of such act to the Chairman of the Council." D.C.Code § 1–282(b)(1). Congress may not, on its own initiative—perhaps after reading about an act in the newspaper or hearing of it in informal discussions—simply suspend its consideration without any formal, statutorily authorized action either by the D.C. Council or Congress itself. Yet that is exactly what plaintiffs claim Congress did in this case.

■ In fact, as is clear from the official public record,[3] both the plaintiffs and the defendants treated the Liability Act as if it had taken legal effect before the referendum was passed. In response to an inquiry from plaintiff Congressman Bliley as to the effect of the referendum, the D.C. Corporation Counsel wrote back on October 30, 1991, that " 'the 30–day layover period for the Strict Liability Act was never tolled and expired on March 6, 1991 [and] Congress no longer has any authority pursuant to the Self–Government Act to disapprove the Strict Liability Act by joint resolution.' " Amended Complaint, at 10. The plaintiffs apparently recognized the validity of Corporation Counsel's view.[4] On the day the referendum was passed by the D.C. voters, plaintiffs introduced H.R. 3712 to *repeal* the Liability Act pursuant to Congress' retained authority over the District, thus proceeding as if the Act were already in effect. *See* H.R. 3712, *supra* (providing that "any provisions of law amended or repealed by [the Strict Liability] Act are restored or revived as if such Act had not been enacted").[5] It seems disingenuous of

---

3. Although a summary judgment motion is also pending in this matter, for purposes of the motion to dismiss, the Court has relied on the facts alleged in the complaint and a limited number of documents that are an undisputed part of the public record.

4. Indeed, Corporation Counsel's opinion was virtually a foregone conclusion by the time it was sent, given the fact that the D.C. Court of Appeals had issued its opinion in *Atkinson* on September 20, 1991.

5. The fact that the plaintiffs were on notice, well before the temporary repealer expired on December 25, 1991, that the Liability Act would take effect on December 26, 1991, is certainly the strongest argument for the Court to exercise its remedial discretion under *Riegle.* In proposing a bill to repeal the Liability Act more than a month and a half before the Act took effect, the plaintiffs were in effect exercising a right to prior review of the Act almost identical to that contemplated by D.C.Code § 1–233(c)(1). The availability of such review rendered the alleged failure of Chairman Wilson to retransmit the Liability Act after passage of the referendum almost irrelevant. Indeed, plaintiffs, if they so desired, could have exercised that review as early as the issuance of the *Atkinson* decision on September 20, 1991, which put them on notice of the current status of the Liability Act. There is no information in the record to indicate the

the plaintiffs to come to the Court now and say in effect that the repealer they proposed in the form of H.R. 3712 was a repealer of a non-existent law.

In light of the foregoing discussion, there is and was, subsequent to the original transmittal of the Liability Act to Congress in January 1991, no need for the Act to be retransmitted either before or after the referendum passed. As the Court of Appeals concluded in *Atkinson*, 597 A.2d at 869, the Liability Act went into effect in March 1991, subject only to the suspension effected by the emergency and temporary repealers.[6]

An appropriate Order accompanies this Memorandum.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that defendants' motion to dismiss is granted; and it is further

ORDERED that plaintiffs' motion for summary judgment is moot; and it is further

ORDERED that the amended complaint is dismissed with prejudice.

---

number of legislative days—as opposed to calendar days—between September 20, 1991 and December 25, 1991; however, if there were thirty, the issues of standing and/or remedial discretion might well have been resolved differently by the Court.

**6.** Given the Court's finding that plaintiffs have failed to state a claim on which relief can be granted, there is no need to address the remaining arguments in defendants' motion regarding immunity of the individuals and the status of the District under 42 U.S.C. § 1983.