Hon. Thomas J. BLILEY, Jr., et al., Appellants,

v.

Sharon Pratt KELLY, Mayor of the District of Columbia, et al.

No. 92–7112.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 9, 1993.

Decided May 20, 1994.

**508**

Terence P. Ross, argued the cause for appellants. With him on the briefs were Theodore B. Olson and Jerry S. Fowler, Jr.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel for the District of Columbia, argued the cause for appellee the District of Columbia. With him on the brief were John Payton, Corp. Counsel for the District of Columbia, and Charles L. Reischel, Deputy Corp. Counsel.

Frederick W. Schwartz, Jr., argued the cause for appellee Committee for Strict Liability.

Before WALD, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The Home Rule Act allows Congress thirty statutory days to review legislation enacted by the Council of the District of Columbia. In December 1990, the Council enacted legislation that would impose strict liability on the manufacturers, dealers, and importers of any assault weapon that caused a bodily injury or death in the District. The legislation was presented to Congress for its review in January 1991; but before the statutory thirty-day review period had elapsed, the Council initiated repeal measures that were ultimately frustrated by a referendum vote. The question presented to us is whether the congressional review period was suspended as a result of the Council's action. We hold that it was. But because Congress failed to disapprove the legislation within thirty statuto-

ry days following the expiration of a temporary "repeal" measure, we conclude that the District's strict liability legislation is now law.

## I. BACKGROUND

### A. Legal Framework

Article I, section 8, clause 17 of the Constitution empowers Congress to "exercise exclusive Legislation" over the District of Columbia. In 1973, Congress delegated the bulk of this authority to the District by passing the Home Rule Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (codified as amended at D.C.Code §§ 1–201 *et seq.*). This delegation is subject to specific limitations and reservations, two of which are here relevant: Congress retains the authority to enact "legislation for the District on any subject ... including legislation to amend or repeal any law in force in the District ... and any act passed by the [District of Columbia] Council." D.C.Code § 1–206. It has also reserved the right to veto legislation enacted by the District in accordance with the following procedure:

> [T]he Chairman of the Council shall transmit to the Speaker of the House of Representatives, and the President of the Senate, a copy of each act passed by the Council and signed by the Mayor.... [S]uch act shall take effect upon the expiration of the 30–calendar–day period (excluding Saturdays, Sundays, and holidays, and any day on which neither House is in session because of an adjournment sine die, a recess of more than 3 days, or an adjournment of more than 3 days) beginning on the day such act is transmitted by the Chairman to the Speaker of the House of Representatives and the President of the Senate, or upon the date prescribed by such act, whichever is later, unless during such 30–day period, there has been enacted into law a joint resolution disapproving such act.

*Id.* § 1–233(c)(1).

In sum, the Home Rule Act allows Congress a layover period of thirty statutory days to review legislation submitted by the D.C. Council. If Congress fails to pass a joint resolution of disapproval within that period, the legislation becomes law. The

Home Rule Act contains two express exceptions to this provision. First, emergency legislation enacted by the Council need not be presented for congressional review. *Id.* § 1–229(a). Such legislation, however, expires no more than ninety days after its enactment. *Id.* Second, should an act that is awaiting congressional review become the subject of a petition for a voter referendum, it must be returned to the Council pending the outcome of the referendum. *Id.* § 1–282(b)(1).

## B. Facts

In December 1990, the D.C. Council passed, and the Mayor signed, the Assault Weapon Manufacturing Strict Liability Act of 1990 ("Liability Act"). D.C. Act 8–289, 37 D.C.Reg. 8482 (1990). This legislation would render manufacturers, dealers, and importers of assault weapons strictly liable for all bodily injuries and deaths that resulted from the firing of such weapons. On January 11, 1991, the Chairman of the D.C. Council transmitted the Liability Act to Congress for review. Under the terms of the Home Rule Act, Congress had until March 6, 1991—thirty statutory days—to consider the legislation.

The Liability Act met with immediate opposition in Congress; and on January 18, 1991, Congressman Thomas J. Bliley, ranking minority member of the House Committee on the District of Columbia, introduced a resolution of disapproval in the House of Representatives. Shortly thereafter, District leaders, who were seeking additional funding, entered into negotiations with Congress in which a political understanding was reached: "Congress gave assurances that funds would be appropriated for the District if the Liability Act was repealed. The District officials were agreeable." *Bliley v. Kelly,* 793 F.Supp. 353, 354 (D.D.C.1992).

Pursuant to this agreement, on February 5, 1991, the D.C. Council enacted the first of three acts that were designed to carry out the District's side of the bargain in a manner consistent with its legislative procedures. *See Atkinson v. Bd. of Elections & Ethics,* 597 A.2d 863, 864 n. 3 & 865 n. 5 (D.C.1991). Three days later, on February 8, Congressman Bliley asked the House Committee to suspend consideration of his resolution.

The first of these acts was styled the "Assault Weapon Manufacturing Strict Liability Act of 1990 Emergency Repealer Act of 1991" ("Emergency Repealer"), D.C. Act 9–1, 38 D.C.Reg. 1457 (1991). Because it was an emergency measure, it could remain in effect for no longer than ninety days and was exempt from congressional review. *See* D.C.Code § 1–229(a). On March 15, the Council passed the second act, which "repeal[ed the Strict Liability Act] on a temporary basis." *See* D.C. Act 9–8, 38 D.C.Reg. 1962 (1991) ("Temporary Repealer"). The Temporary Repealer was subject to the thirty-day congressional review period and, on its terms, was to "expire on the 225th day of its having taken effect, or upon the effective date of the [yet-to-be-enacted] Assault Weapon Manufacturing Strict Liability Act of 1990 Repealer Act of 1991, whichever occurs first." *Id.* at 1963. Consequently, the Liability Act remained in a statutory limbo after the Emergency Repealer's ninety-day period had expired.

Finally, on May 17, 1991, the Council enacted the "Assault Weapon Manufacturing Strict Liability Act of 1990 Repealer Act of 1991," D.C. Act 9–32, 38 D.C.Reg. 3380 (1991) ("Permanent Repealer"); and on May 23, the Chairman of the Council duly submitted the Permanent Repealer to Congress for review. Five days later, on May 28, a proposed referendum measure was submitted to the District of Columbia Board of Elections and Ethics. The Board designated it as "Referendum Measure No. 006" and titled it "Referendum on the Assault Weapon Manufacturing Strict Liability Act Repealer Act of 1991." The petition in support of the referendum was filed with the Board on July 12, before the congressional review period for the Permanent Repealer had expired. Upon being advised of the referendum petition, Congress returned the measure to the Council, as required by the Home Rule Act. D.C.Code § 1–282(b)(1). On November 5, 1991, the District's electors voted to reject the Permanent Repealer. The Temporary Repealer, however, remained in effect until

December 25, 1991—the 225th day following its adoption.

Congressman Bliley and three other members of the House of Representatives brought this action on February 19, 1992, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Up to that time, Congress had taken no action with respect to the Liability Act. The specific purpose of their suit was to secure a judgment requiring the Council to resubmit the Act to Congress and declaring that the Act had not taken effect and could not take effect until it had been resubmitted for review pursuant to section 1–233(c)(1). *See* Amended Complaint at 12–13. They argue that the adoption of the Emergency and Temporary Repealers had removed the Liability Act from congressional consideration, thereby requiring a new submission. The district court disagreed; and because it concluded that the Act had taken effect in March 1991 on the expiration of the statutory review period initiated by the Act's transmission to Congress, it granted the District's motion to dismiss appellants' claim. *Bliley v. Kelly,* 793 F.Supp. 353 (D.D.C.1992). We review this decision *de novo. Danielsen v. Burnside-Ott Aviation Training Ctr.,* 941 F.2d 1220, 1230 (D.C.Cir.1991).

## II. DISCUSSION

### A. Jurisdiction

█ The District begins its defense by raising two jurisdictional arguments. It first urges that the district court abused its discretion by hearing this suit. It maintains that under the doctrine of equitable discretion, the court should have dismissed the Congressmen's claim. This argument stems from our decisions in *Melcher v. Fed. Open Mkt. Comm.,* 836 F.2d 561 (D.C.Cir.1987), and *Riegle v. Fed. Open Mkt. Comm.,* 656 F.2d 873 (D.C.Cir.1981). We stated in *Melcher* that "if a legislator could obtain substantial relief from his fellow legislators through the legislative process itself, then it is an abuse of discretion for a court to entertain the legislator's action." 836 F.2d at 565 (footnote omitted); *see also Riegle,* 656 F.2d at 881. The District argues that appellants should not be in court because, as members of Congress, they could (and still can) seek

relief simply by introducing legislation to repeal the Liability Act.

This argument misapprehends the nature of appellants' injury. It is not that they will be harmed if the Liability Act becomes law; it is that such an occurrence would deprive them of their right, as members of Congress, to review the Liability Act before it becomes law. A deprivation of this right cannot be remedied by repealing the Liability Act once it has taken effect. As the district court aptly noted, "the injury claimed by the plaintiffs cannot be cured by subsequent legislation. Subsequent legislation could only repeal the Liability Act—a result not sought in this action—not give the plaintiffs back their right to prior approval of it." *Bliley,* 793 F.Supp. at 355.

The district court's analysis finds firm support in *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974). In that case, Senator Edward Kennedy challenged President Nixon's exercise of a "pocket veto"—a refusal to sign a bill while Congress was adjourned for the Christmas holidays. The Government urged us to decline to hear the case on the ground that Congress was free to re-enact the bill. We rejected the argument because such a measure "would not change the fact that the pocket veto power will have been used as an obstacle—however temporary—to the implementation of the will of Congress." 511 F.2d at 436 n. 17. The parallel here is self-evident.

█ The District next contends that appellants have failed to state a cause of action under 42 U.S.C. § 1983. The District insists that the Act establishes a comprehensive remedial scheme that evidences a congressional intent to foreclose judicial remedies. *See Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990). This argument lacks merit. As the Supreme Court noted in *Wilder,* the District has the burden "to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose" resort to enforcement under section 1983. *Id.* at 520–21, 110 S.Ct. at 2523. The District has made no such showing; and it cannot because the statutory scheme confers

a right of participation on Congress that is not beyond the competence of the judiciary to enforce, as we recognize above in our discussion of equitable discretion. The District further argues that the Council's legislative immunity precludes appellants' suit. It is true that section 1983 does not permit suits against legislators acting in their legislative capacity. *Gross v. Winter,* 876 F.2d 165, 169 (D.C.Cir.1989). This immunity, however, "protects legislators only in the exercise of legislative functions, not administrative functions." *Id.* at 169–70. Here, the Council's duty to transmit its acts to Congress is purely ministerial.

## B. The Merits

■ The central issue in this appeal concerns the interplay between the Emergency and Temporary Repealers on the one hand and the Home Rule Act on the other. Appellants argue, in effect, that because both of the Repealers used the word "repeal," the legislation that had been submitted to Congress had ceased to exist; therefore, there was nothing before Congress to be reviewed during the period that ended on March 6, 1991. This argument, however, does not explain the limited terms of these "repeals" or the need for the Permanent Repealer. As the District of Columbia Court of Appeals noted, in discussing the effect of the Emergency Repealer:

> It would seem a tortured distortion of ordinary language to construe an emergency repeal act, which by its own terms is effective for only 90 days, to have the effect of nullifying on a permanent basis a Council Act itself intended to be permanent.

*Atkinson v. Bd. of Elections & Ethics,* 597 A.2d 863, 867 (D.C.1991). That interpretation of the effect of legislative action by the D.C. Council dealing with matters within its jurisdiction is, of course, binding on this court. In legal effect, then, these measures did nothing more than to suspend the Liability Act (the first for ninety days and the second for 225) to allow time for a permanent repealer to be enacted and become law. It is the effect of this suspension on the statutory

layover period mandated by the Home Rule Act that lies at the heart of this appeal.

The Home Rule Act does not address a situation where the Council itself initiates the repeal of legislation while it is awaiting congressional review. The District argues that because there are no provisions in the Act to the contrary, the thirty-day period runs uninterrupted despite the intervening enactment of legislation designed to suspend and then repeal the legislation that has been submitted for review. Under this reasoning, the Liability Act would have become law on March 6, 1991, thirty statutory days after it had been submitted to Congress.

We note at the outset that the District of Columbia Court of Appeals reached this conclusion in *Atkinson,* 597 A.2d at 869. But while we must defer to that court on its interpretation of purely local law, *Hall v. Ford,* 856 F.2d 255, 267 (D.C.Cir.1988), we owe it no such deference on matters of federal law. The Home Rule Act is a "hybrid statute" that contains elements of both federal and local law. *Thomas v. Barry,* 729 F.2d 1469, 1471 (D.C.Cir.1984). It is self-evident, however, that questions regarding Congress's reserved right to review District legislation before it becomes law concerns an exclusively federal aspect of the Act. We therefore owe this ruling of the D.C. Court of Appeals no more than the deference that is always due the decisions of a sister court.

In *Atkinson,* the D.C. Court of Appeals addressed the argument that the Repealers had tolled the thirty-day review period and found it wanting:

> The most fundamental difficulty with appellant's argument ... is that it is based on a faulty premise: that the 1991 repealer acts have legally affected the process of congressional layover for the [Liability] Act. Appellant offers no statutory or case foundation for this assertion, and we find none in the statutory scheme.

*Atkinson,* 597 A.2d at 868. The court then concluded that because the Liability Act had remained "in effect[,] ... [t]he Congressional review period ha[d] passed." *Id.* at 869 (internal quotation marks omitted). We are not persuaded. It seems obvious to us that the reason there is no provision in the statutory

scheme for the contingency now before us is that Congress simply did not anticipate that the Council might change its mind and attempt to repeal an act so soon after it had been enacted and transmitted to Congress. In other words, we are faced with a legislative gap.

In such circumstances, it is our duty to determine, as best we can, how Congress would have filled that gap had it anticipated the circumstances creating it. As the Ninth Circuit observed in *Carter v. Derwinski:*

> We may, as a matter of legislative interpretation, place a gloss on vague or undefined terms. Congressional silence may, from time to time, require us to fill gaps within the interstices of a statute.

987 F.2d 611, 615 (9th Cir.1993) (*en banc*) (citation omitted). We believe the answer is clear when one examines the provisions of the Home Rule Act for dealing with the situation where legislation enacted by the Council is made the subject of a referendum.

Section 1–282 of the D.C.Code provides that upon the presentation of a petition for a referendum to the D.C. Board of Elections and Ethics, the Board must notify Congress of the fact and Congress, in turn, must return the challenged legislation to the Council. Section 1–233(c)(1) provides that if the challenged legislation is approved by the District's voters, the Chairman of the Council must resubmit it to Congress, and the legislation "shall take effect upon the expiration of the [statutory thirty-day period] beginning on the day such [legislation] is transmitted by the Chairman to the [Congress]." Thus, in the circumstances where the legislation awaiting congressional review is placed in jeopardy as a result of a referendum petition, the Home Rule Act withdraws it from congressional consideration until its fate is known. If the legislation survives the referendum, the Act ensures that Congress will have a new thirty-day period within which to consider it.

These provisions reflect the practical difficulty of expecting the two Houses of Congress to focus the attention required to assess the merits of legislation submitted by the Council if there is a possibility that it will be rejected by the District's voters. The Act therefore defers congressional review until after the result of the referendum is known.

Here, we are faced with comparable circumstances, the difference being that the Council itself, rather than the sponsors of a referendum petition, had initiated the action to rescind legislation that had been referred to Congress. Furthermore, as in the case of the filing of a referendum petition, the enactment of the Emergency and Temporary Repealers relieved Congress of the need to review legislation that the Council itself was in the process of repealing. We conclude, therefore, that as in the case of the filing of a referendum petition, the enactment of the Emergency and Temporary Repealers resulted in the suspension of the review period pending final action on the Liability Act by the District.

■ The remaining question, then, is the effect of the Repealers and the subsequent referendum vote on the thirty-day review period required by the Home Rule Act as a precondition to the Liability Act's taking effect. Did Congress only have the time remaining at the date of the suspension within which to decide whether to disapprove the measure, or was it entitled to a new period of thirty consecutive days within which to review the Act, as would have been the case had the Liability Act, rather than the Permanent Repealer, been the subject of the referendum? We again look for guidance to the procedures instituted by Congress when legislation awaiting congressional review is challenged in a referendum petition.

As noted earlier, section 1–233(c)(1) of the D.C.Code provides that if the District's electors vote their approval of an act that is subject to a referendum, the Council will resubmit it to Congress, and the thirty-day statutory review period will begin to run anew as of the date of the resubmission. In the case before us, of course, the Liability Act has remained in the' hands of Congress as there is no provision for its return to the Council in the absence of a referendum. Appellants nevertheless insist that after the Temporary Repealer had expired, the D.C. Council had a duty to resubmit the Liability Act to Congress for review; and because the

Council failed to do so, they argue that the statutory review period has yet to begin. We disagree. A new submission by the Council to Congress was not necessary because the bill remained in Congress's hands; nor do we believe such a formal act was required to effectuate the Home Rule Act's goals. Congress retained possession of the Liability Act, and it knew precisely when the Temporary Repealer was due to expire.

In light of the critical role of the layover period in Congress's plan for a "type of veto of Council actions [that] will ensure to the Congress the continued ultimate control of the affairs of the District," S.Rep. No. 219, 93d Cong., 1st Sess. 6 (1973), and because Congress made it apparent, in section 1–233(c)(1), that that period must be uninterrupted if it is to be effective, we hold that a new thirty-day period for congressional review of the Liability Act began the day after the result of the referendum was announced. With that announcement, Congress was on notice that, absent a congressional resolution of disapproval, the Act would take effect by operation of law on the expiration of the Temporary Repealer. Because Congress failed to adopt such a resolution, we conclude that the Liability Act is now law.

Finally, appellants assert that the Liability Act was itself a subject of the November 1991 referendum; consequently, as the vote represented an approval of the Act, it should have been resubmitted to Congress for its review pursuant to section 1–233(c)(1) of the D.C.Code. Appellants maintain that as this has not occurred, the review period has yet to begin. In support of this contention, they cite the following language from the referendum:

> BE IT RESOLVED BY THE ELECTORS OF THE DISTRICT OF COLUMBIA, that the Assault Weapon Manufacturing Strict Liability Act of 1990 is preserved and the Assault Weapon Manufacturing Strict Liability Act of 1990 Repealer Act of 1991 is rejected.

Brief for Appellants at 27. Appellants confuse effect with cause. The title of Referendum Measure No. 006 speaks for itself: "Referendum on the Assault Weapon Manufacturing Strict Liability Act *Repealer Act of*

*1991.*" (Emphasis added). As the D.C. Board of Elections and Ethics informed Congress, "the purpose of the Measure is to suspend D.C. Act 9–32 [the Permanent Repealer]." *See* letter from Board to Speaker Foley of the House of Representatives dated July 12, 1991; *see also Atkinson,* 597 A.2d at 865 ("The proposed referendum measure would put to the voters the question whether Act 9–32, the permanent repeal of the 1990 Act, should be adopted or disapproved"). By voting to "negat[e] the permanent repealer," *id.* at 869, the District's electors allowed the Liability Act to take effect.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

*Affirmed.*