ANÍBAL ACEVEDO VILÁ y OTROS, demandantes y recurrentes, *v.* BALTASAR CORRADA DEL RÍO y OTROS, demandados y recurridos.

*Número:* RE-94-620        *Resuelto:* 30 de junio de 1995

*Zaideé Acevedo Vilá*, abogada de los recurrentes.

## RESOLUCIÓN

(En reconsideración)

A la moción de reconsideración, *no ha lugar.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión de conformidad. El Juez Asociado Señor Negrón García disintió con una opinión escrita. El Juez Asociado Señor Alonso Alonso disintió con una opinión escrita, a la que se unió el Juez Asociado Señor Fuster Berlingeri.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

(En reconsideración)

Disentimos, *en forma vehemente*, cuando una mayoría de los integrantes del Tribunal, en dos (2) ocasiones distintas, le *negó* legitimación activa (*standing*) a la hoy Presidenta de la Cámara de Representantes, Hon. Zaida Hernández Torres, y a otros legisladores pertenecientes al Partido Nuevo Progresista, para impugnar la resolución conjunta mediante la cual la Asamblea Legislativa aprobó el presupuesto, para el año de 1991–1992, de la administración del Lcdo. Rafael Hernández Colón y para impugnar la ley que creó el Departamento de Asuntos de la Comunidad Puertorriqueña en Estados Unidos, estatuto igualmente aprobado por las cámaras legislativas bajo la referida administración de gobierno. Véanse: *Hernández Torres v. Hernández Colón et al.*, 131 D.P.R. 593 (1992), y *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992).

Hoy, *sin embargo*, damos nuestro voto de conformidad a una resolución mayoritaria mediante la cual este Tribunal, igualmente, le niega legitimación activa (*standing*) a unos legisladores pertenecientes, *esta vez*, al Partido Popular Democrático para impugnar unas actuaciones del Comité Interagencial de Evaluación y Aprobación de Propuestas de Mantenimiento Extraordinario (en adelante Comité Interagencial), creado el mismo originalmente, al amparo de las disposiciones de la Ley de Fondo de Mantenimiento

Extraordinario;[1] comité cuyos miembros actuales fueron nombrados bajo la administración de gobierno del presente Gobernador de Puerto Rico, Hon. Pedro M. Rosselló.

Nuestra actuación, no hay duda, puede causar sorpresa en la mente del *no* pensante. Habrá algunas personas, inclusive, que pensaran que estamos actuando, de manera inconsistente, debido a motivaciones no jurídicas. *Nada más lejos de la verdad y de la realidad.*

La razón detrás de nuestro actuar jurídico, en el día de hoy y en el presente caso, resulta ser sorprendentemente sencilla. *Como integrante de este Tribunal, que ama y respeta el mismo, venimos en la obligación de velar por el buen nombre y reputación de esta institución en todo momento.*

La norma jurisprudencial establecida por este Tribunal, en los antes citados casos *Hernández Torres v. Hernández Colón et al.*, ante, y *Hernández Torres v. Gobernador*, ante, hace apenas tres (3) años, constituye la *norma vigente* en nuestra jurisdicción en materia de legitimación activa (*standing*). La referida norma jurisprudencial *obliga* a este Tribunal. Ahí la razón para que, inclusive, el Juez suscribiente *acatara y/o aplicara* la misma, *como Juez ponente*, en la decisión que este Tribunal emitiera en *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994).

Las normas jurisprudenciales, *naturalmente*, pueden ser variadas y/o modificadas por el tribunal apelativo que las ha establecido. *Ahora bien, resultaría, cuando menos, trágico para esta Institución que las normas que establece sean variadas únicamente por razón de la identidad de los litigantes y la afiliación política de los mismos.* Esto es, la *única* diferencia entre los casos *Hernández Torres v. Hernández Colón et al.*, ante, y *Hernández et al. v. Hernández Colón et al.*, ante, y el caso hoy ante nuestra consideración lo es que en los primeros los demandantes eran miembros del Partido Nuevo Progresista y, en el presente, los litigantes son afiliados del Partido Popular Democrático. *Eso*

---

[1] Ley Núm. 66 del 14 de agosto de 1991 (7 L.P.R.A. sec. 1382 *et seq.*).

*nunca puede ser razón, o fundamento, para que este Tribunal varíe o modifique su jurisprudencia.*

Si Zaida Hernández Torres *no* tenía *standing* en el 1992 para impugnar la resolución legislativa conjunta sobre el presupuesto y para cuestionar la ley que creó el mencionado Departamento de Asuntos de la Comunidad Puertorriqueña en Estados Unidos, *tampoco* tiene *standing* Aníbal Acevedo Vilá en el día de hoy para impugnar las actuaciones del mencionado Comité Interagencial; *sobre todo*, cuando se considera el *hecho adicional* —incuestionable, demoledor y ausente en los casos *Hernández Torres v. Hernández Colón et al.*, ante, y *Hernández et al. v. Hernández Colón et al.*, ante— de que Aníbal Acevedo Vilá *no* era *ni* tan siquiera miembro de la Asamblea Legislativa cuando se aprobó la referida Ley de Fondo de Mantenimiento Extraordinario.

En resumen, *y aun a costa de nuestro criterio jurídico personal*, suscribimos la Resolución mayoritaria emitida en el presente caso por el Tribunal *con el propósito de evitar que la imagen, el buen nombre y la reputación de esta Institución sufran un perjuicio irreparable y trágico.*(2)

---

(2) Aun cuando optáramos por seguir nuestro criterio jurídico personal, *no* se lograría variar la norma vigente en nuestra jurisdicción en relación a la legitimación activa de los legisladores establecida por este Tribunal en *Hernández Torres v. Hernández Colón et al.*, ante, y *Hernández et al. v. Hernández Colón et al.*, ante. Ello así ya que dos (2) de los integrantes de este Tribunal, los Jueces Asociados Señor Alonso Alonso y Señor Fuster Berlingeri, *no* están en posición de revocar la misma sino que *prefieren* "distinguir" el presente caso de casos citados en este escolio. En consecuencia, aun cuando insistiéramos en nuestra original posición en relación a este asunto, la decisión que en su día pudiera emitir este Foro sería una pluralista, *cuyo resultado necesariamente le restaría certeza y uniformidad al estado de derecho vigente en nuestra jurisdicción*; creándose, por el contrario, un "estado de confusión" en relación con esta materia que, repetimos, afectaría, gravemente y de manera permanente, la imagen, buen nombre y reputación de este Foro.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

I

Este recurso permitiría al Tribunal modificar la restrictiva doctrina sobre legitimación activa (*standing*) de los legisladores y revocar las injustas y erróneas decisiones de *Hernández Torres v. Hernández Colón et al.*, 131 D.P.R. 593 (1992), y *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992).

Claramente, la actual delegación del Partido Popular Democrático (en adelante P.P.D.) en la Cámara de Representantes (Hon. Aníbal Acevedo Vilá *et al.*), que presentó una demanda sobre sentencia declaratoria e *injunction*, tiene legitimación activa para impugnar la legalidad de los desembolsos de fondos públicos bajo la Ley del Fondo de Mantenimiento Extraordinario, Ley Núm. 66 de 14 de agosto de 1991 (7 L.P.R.A. sec. 1382 *et seq.*).

Al respecto, sus alegaciones revelan que, entre otros extremos, dicho estatuto proveyó la creación del *Comité Interagencial de Evaluación y Aprobación de Propuestas de Mantenimiento Extraordinario*, el cual quedó facultado para aprobar reglamentos. Aducen que dicho comité promulgó un reglamento que de facto infringe la Ley Núm. 66, *supra*, enmendándola al margen del proceso legislativo. En otras palabras, impugnan la validez del reglamento por *ultra vires*, ya que, según ellos, modificó sustancialmente la citada Ley Núm. 66.

Ello independientemente de que en el *cuatrienio anterior* el Hon. Aníbal Acevedo Vilá y otros de los demandantes no intervinieran en la aprobación de la Ley Núm. 66, *supra, pues todavía no habían sido electos*. La legitimación activa se mide al momento de presentarse la acción

judicial. No hay fundamento jurídico válido para establecer limitaciones fundamentadas en mayorías o minorías parlamentarias acorde con los resultados electorales del ayer o del presente. Semejante solución, por ficción, es intolerable.

La legitimación activa de los legisladores para impugnar la legalidad de una actuación u omisión de un funcionario o entidad, con o sin reglamento[1] —si dicha actuación u omisión se traduce en anular el voto de aquél— no puede supeditarse a que el legislador que haya instado la acción perteneciera a un conglomerado mayoritario que hubiera prevalecido en el debate legislativo y, con su voto afirmativo, hiciera viable la producción de una pieza legislativa. Ciertamente, goza de igual legitimación el legislador minoritario que vota contra una medida inconstitucional que posteriormente una avasalladora mayoría convierte en ley, dándole así apariencia de licitud; un voto mayoritario jamás puede sanar los vicios de una medida de ese tipo.

## II

En nuestro disenso en *Hernández Torres v. Gobernador*, supra, pág. 851, postulamos " 'reconocerle a un legislador legitimación activa *[standing] cuando demuestra que la actuación impugnada tiene el efecto de anular su voto, pasado o futuro*, o cuando están en juego otros aspectos fun-

---

[1] Tampoco cabe pretender que se establezcan distinciones fundamentadas en que la causa de acción se apuntala en unas enmiendas *ultra vires* a un reglamento. A fin de cuentas, un reglamento no es otra cosa que una colección escrita de reglas o preceptos para guiar a los ciudadanos y funcionarios en el descargo de una encomienda o cumplimiento de una ley, actividad que se traduce en una acción u omisión.

Un legislador tiene legitimación activa para impugnar las acciones u omisiones de funcionarios que mal administran determinada ley con o sin reglamento. En términos de perjuicio real, ¿puede seriamente distinguirse una asignación ilegal de fondos públicos vía reglamento de aquella producto de una decisión de un funcionario? En esa situación, a la postre, ¿no estamos ante una violación directa de una ley *cuyo efecto es usurpar* la función constitucional de la Asamblea Legislativa y menoscabar las prerrogativas de sus miembros?

damentales de sus prerrogativas legislativas'". (Énfasis en el original.)

Bajo ese prisma, sin prejuzgar los méritos de esta controversia, no cabe duda de que los demandantes Acevedo Vilá *et al.* tienen legitimación activa. *Por su condición actual de legisladores minoritarios* están investidos de la facultad de legislar y disponer el desembolso de fondos públicos por "ley". Además, tienen un interés específico de velar que toda enmienda reglamentaria o acción de funcionario que autorice la asignación o desembolso de fondos públicos sea para proyectos cobijados y que cumplan los propósitos del Fondo de Mantenimiento Extraordinario.

Como expresáramos en la primera decisión [de *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992)], esa norma anquilosa el proceso evolutivo liberal que reconoce el derecho de los legisladores "a reivindicar las prerrogativas de sus cargos". Reiteramos una vez más lo erróneo de sostener que el derecho de fiscalización de las minorías halla su epílogo "con la sola participación en 'el debate y proceso legislativo', esto es, con votar a favor o en contra de una ley". Como señaláramos, contrario a la corriente doctrinaria prevaleciente en el ámbito federal, nuestra Constitución reconoce *expresamente* a las minorías legislativas el papel de fiscalizadores, *aun bajo las circunstancias más desfavorables.* 4 Diario de Sesiones de la Convención Constituyente 2590 (1961); *Fuster v. Busó*, 102 D.P.R. 327, 342 (1974).

Negar fuera de la arena política la legitimación activa a los legisladores para vindicar sus derechos constitucionales es reducir esa función a meros espectadores y, ante los abusos mayoritarios, cerrarles las puertas de los tribunales. Así olvidamos que, a fin de cuentas, la legitimación activa de los legisladores *nace* de la Constitución. Nuestra ley fundamental visualiza a las minorías como el instrumento democrático de fiscalización idóneo para frenar los excesos de las mayorías.

"Es obvio, que si cualesquiera —Primer Ejecutivo o la Asamblea Legislativa— menoscaba o incumple dicho deber constitucional, el otro poder puede legítimamente venir a los tribunales a compeler su cumplimiento. Y en sana lógica es ineludible concluir que si la Asamblea Legislativa, como Cuerpo, no actúa en defensa de sus prerrogativas constitucionales, cualquiera de sus miembros tiene legitimación activa para acudir a los tribunales y obligar al Primer Ejecutivo a cumplir con el deber afirmativo impuesto por nuestra Constitución. *Esa es la única*

*forma en que puede evitarse que se menoscabe su voto. No con-*
*cebimos cómo en un gobierno de leyes, no hombres, un legislador*
*venga obligado a aceptar dócil y pasivamente la inconstitucio-*
*nalidad o ilegalidad de un acto ejecutivo que anula una legis-*
*lación vigente —y sus votos— por el simple hecho de ostentar*
*esa condición. En materia de justiciabilidad, no debemos con-*
*fundir legitimidad con 'cuestión política'.* (Énfasis en el original
suprimido y énfasis suplido.) *Hernández Torres v. Gobernador,*
supra, págs. 853–854, opinión disidente." *Noriega v. Hernández*
*Colón,* 135 D.P.R. 406, 470–471 (1994), opinión concurrente.

## — O —

Opinión disidente del Juez Asociado Señor Alonso Alonso, a
la cual se une el Juez Asociado Señor Fuster Berlingeri.

### (En reconsideración)

Desde el 10 de marzo señalé que expidiría este recurso
en la resolución mediante la cual se denegó el mismo. En
reconsideración, hoy reitero mi posición por considerar que
los recurrentes tienen legitimación activa para incoar la
presente acción. La doctrina de legitimación activa estable-
cida por los tribunales no puede tener el efecto de cerrarle
las puertas de los tribunales a unos demandantes que ale-
gan tener unos reclamos legítimos. El procedimiento judi-
cial y legal es un medio para que los derechos de las per-
sonas y los fines de la justicia se logren. Lo que es un medio
no puede tener el efecto de impedir que el fin se logre.
Según el fin no justifica los medios, los medios no pueden
ser justificación para que el fin de hacer justicia sea
vulnerado.

### I

La delegación parlamentaria perteneciente al Partido
Popular Democrático en la Cámara de Representantes pre-
sentó una demanda sobre sentencia declaratoria e *injunc-*
*tion* en el Tribunal Superior (Sala de San Juan) contra los
miembros del Comité Interagencial de Evaluación y Apro-

bación de Propuestas de Mantenimiento Extraordinario (en adelante Comité Interagencial).

En la demanda se impugnó la actuación de este Comité Interagencial creado mediante la Ley del Fondo de Mantenimiento Extraordinario, Ley Núm. 66 de 14 de agosto de 1991 (7 L.P.R.A. sec. 1382 *et seq.*). Entre otras, se alegó que mediante la aprobación de unas enmiendas al Reglamento del Comité Interagencial (en adelante Reglamento), sus miembros se han abrogado las facultades constitucionales de los legisladores demandantes. En específico, se alegó que las referidas enmiendas al Reglamento constituyen unas enmiendas de facto de la citada Ley Núm. 66, lo cual usurpa la prerrogativa y función constitucional que le corresponde a los legisladores. Se alegó, además, que las enmiendas al Reglamento constituyen una actuación *ultra vires* que le permite a los demandados realizar unas asignaciones de fondos públicos ilegales. En específico, los demandantes identificaron las asignaciones de fondos siguientes: remodelación de la cocina de la Fortaleza; construcción de verjas, casetas y portones en residenciales públicos, y otras obras en varias instituciones penales.

Los recurrentes señalaron que el efecto de las enmiendas al Reglamento menoscaba la efectividad del voto (de aquellos que votaron a favor de la citada Ley Núm. 66) y les priva de ejercer su facultad constitucional de aprobar y enmendar las leyes y determinar por la vía legislativa si procede o no una enmienda a la ley.

En la demanda se solicitó que las enmiendas al Reglamento fueran declaradas ilegales; un *injunction* permanente para prohibir desembolsos de dineros del Fondo para los anteriores fines, y la devolución y reembolso de los referidos fondos.

Los demandados, por su parte, solicitaron la desestimación de la demanda por carecer los demandantes de legitimación activa (*standing*). A esto se opusieron los demandantes. El tribunal de instancia dictó una sentencia

en la que desestimó el pleito. Concluyó el tribunal que los demandantes carecen de legitimación activa para instar este pleito, tanto bajo la jurisprudencia local como bajo la federal. Al así hacerlo, en nuestra opinión, erró el tribunal. Veamos.

## II

Conforme con la doctrina de legitimación activa, el promovente de la acción debe cumplir con los requisitos indispensables siguientes: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que la causa de acción debe surgir bajo el palio de la Constitución o de una ley, y (4) que exista una conexión entre el daño sufrido y la causa de acción ejercitada. *Fund. Arqueológica v. Depto. de la Vivienda*, 109 D.P.R. 387, 392 (1980); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 414 (1982); *Hernández Torres v. Hernández Colón et al.*, 131 D.P.R. 593 (1992); *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992); *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994).

En el caso particular de los legisladores, recientemente tuvimos la oportunidad de discutir los requisitos aplicables. En *Noriega v. Hernández Colón*, supra, reiteramos la norma pautada A esos efectos, dicha norma dispone que *"un legislador tiene acción legitimada para defender un interés individual tradicional, vinculado con el proceso legislativo o como representante oficialmente nombrado por el cuerpo para impugnar una actuación ejecutiva. ... También tiene 'acción legitimada para vindicar un interés personal en el ejercicio pleno de sus prerrogativas legislativas"*. (Énfasis suplido.) *Hernández Torres v. Gobernador*, supra, pág. 837.

En el caso *Noriega v. Hernández Colón*, supra, pág. 437, le reconocimos a los representantes del Partido Popular Democrático legitimación activa para incoar un *manda-*

*mus* contra el Gobernador, ya que consideramos que la congelación de fondos por parte del Gobernador *"les ha causado un grave daño en sus prerrogativas legislativas, al alegadamente no permitirles adjudicar los fondos que por ley debidamente aprobada les correspondía distribuir;* violentando así el proceso legislativo envuelto". (Énfasis suplido.) Allí se trataba de una resolución conjunta aprobada por ambos cuerpos legislativos y que les asignaba fondos para disponer en sus respectivos municipios, la cual fue paralizada por el Gobernador.

Al representante Noriega, sin embargo, no le reconocimos legitimación activa dado que éste impugnaba la validez constitucional de las resoluciones conjuntas *en la cual él, con su participación legislativa, había favorecido.* A esos efectos expresamos que "[é]ste tuvo amplia oportunidad de rebatir y de tratar de convencer a sus compañeros legisladores de los defectos de las resoluciones conjuntas de marras, por lo que éste tuvo la oportunidad de ejercer a cabalidad la función fiscalizadora que como representante de minoría ostenta y a bien lleva". *Noriega v. Hernández Colón,* supra, pág. 434.

En *Hernández Torres v. Gobernador,* supra, no le reconocimos legitimación activa a dos Representantes de la Cámara, quienes demandaron en representación del "interés público", toda vez que dicha alegación *la consideramos ambigua* y que no cumplía con los criterios doctrinales de legitimación activa. En ese caso tampoco los representantes (Hon. Zaida Hernández y Hon. Edison Misla Aldarondo) *demostraron haber sufrido daños personales, claros y palpables,* ya que su reclamo fundamental era de un *perjuicio general a nombre de toda la ciudadanía.*

Posteriormente, en *Hernández Torres v. Hernández Colón et al.,* supra, tampoco le reconocimos legitimación activa a la Representante Hon. Zaida Hernández Torres *porque no surgía de sus alegaciones que se le estuviera causando un daño claro e inmediato a sus prerrogativas*

*legislativas.* En ese caso, la representante solicitaba que se declarara inconstitucional la Ley Núm. 58 de 16 de agosto de 1989, que creó el Departamento de Asuntos de la Comunidad Puertorriqueña en Estados Unidos, porque la asignación de fondos a dicho departamento afectaría sus prerrogativas legislativas de tener que asignar fondos a un ente creado mediante una ley inconstitucional.

## III

El Fondo de Mantenimiento Extraordinario creado en virtud de la Ley Núm. 66, *supra*, "atenderá, de forma rápida y eficaz, con un mecanismo de financiamiento innovador, las necesidades de mantenimiento de infraestructura repentinas e imprevistas, que por su naturaleza no pueden ser anticipadas y que de esperar a ser atendidas por métodos convencionales permitiría la agudización del problema, en efecto amenazando la utilidad de la obra de infraestructura e incrementando el costo final para atenderla, lo que a largo plazo representa el uso ineficaz de los limitados recursos del Estado". Exposición de Motivos de la Ley Núm. 66, *supra*, 1991 (Parte I) Leyes de Puerto Rico 293. Dicha ley se aprobó en respuesta a las necesidades que surgieran con motivo del fenómeno natural conocido como "Huracán Hugo".

En conformidad con los términos de la citada ley, ésta dispone para la creación del Comité Interagencial de Evaluación y Aprobación de Propuestas de Mantenimiento Extraordinario (en adelante Comité), 7 L.P.R.A. sec. 1382c. La ley dispone que "[l]os dineros del Fondo podrán ser desembolsados y utilizados únicamente para aquellas necesidades de mantenimiento extraordinario que cumplan con los requisitos definidos en la sec. 1382 de este título y los reglamentos promulgados por el Comité Interagencial ...". 7 L.P.R.A. sec. 1382a.

Para los propósitos de la ley, "necesidades de mantenimiento extraordinario" se definen como:

... aquellas necesidades de mantenimiento imprevistas o repentinas de naturaleza no recurrente que permitan extender la vida útil de las facilidades, y aquellas necesidades de mantenimiento existentes a la vigencia de esta ley que, debido a su severidad y naturaleza amenacen de inutilizar, de no ser atendidas y superadas inmediatamente, la obra de infraestructura en la cual recaen dichas necesidades de mantenimiento, o afectan severamente los servicios para los que se construyó la facilidad, incluyendo, sin que se entienda como una limitación, aquellas renovaciones, reemplazos y mejoras tendientes a preservar o extender la vida útil del activo. 7 L.P.R.A. sec. 1382(c).

La Asamblea Legislativa le asignó al Comité Interagencial las funciones siguientes:

... [E]valuará y aprobará o desaprobará las propuestas de los departamentos, agencias e instrumentalidades del Estado Libre Asociado que interesen la utilización de los recursos del Fondo hacia la realización de obras de trabajos que cumplan los requisitos de necesidades de mantenimiento extraordinario establecidos por las secs. 1382 *et seq.* ....
... [A]doptar á aquellos reglamentos necesarios para la implantación de las secs. 1382 *et seq.* de este título incluyendo los requisitos, procedimientos y formalidades a ser observadas por aquellas entidades públicas que presenten propuestas ante el Comité.
Luego de evaluada la propuesta ... *el Comité procederá a aprobarla por unanimidad como una necesidad extraordinaria de mantenimiento que cumpla con los propósitos de las secs. 1382 et seq. de este título* y que cualifique para recibir dineros de Fondo y autorizará el desembolso de los dineros aprobados o desaprobarla como una propuesta que no cumple con los propósitos y requisitos de dichas secciones. 7 L.P.R.A. sec. 1382c.

La ley dispone una fórmula permanente para que el Fondo se nutra de recursos que aumenten cada año para que, independientemente de los recursos regulares disponibles, se cree una reserva de recursos fiscales para atender situaciones extraordinarias que no pueden ser atendidas con los recursos corrientes de que dispone el Estado. Se trata de un fondo en la naturaleza de un fideicomiso sepa

rado y permanente de los fondos regulares que el Estado asigna anualmente, dependiendo de cuáles son sus prioridades anuales.

El Fondo no es para atender necesidades fiscales que pueden o deben ser atendidas anualmente por el Estado. Nótese que incluso el Fondo se capitaliza con una aportación del cinco por ciento (5%) de la emisión de bonos anual para el Programa de Mejoras Permanentes del Estado Libre Asociado de Puerto Rico y de que todas las aportaciones ingresaran al Fondo sin un año fiscal determinado y se mantendrán en una cuenta separada de cualesquiera otros fondos del Estado Libre Asociado de Puerto Rico. 7 L.P.R.A. sec. 1382b.

Los recurrentes señalan que las enmiendas hechas al Reglamento tienen el efecto de enmendar de facto la referida ley, autorizando así la asignación ilegal de fondos públicos para proyectos que no cumplen con los propósitos de la creación y operación del fondo de mantenimiento extraordinario. Esta actuación del Comité, en la medida en que constituye una enmienda a la ley, alegan los demandantes que les abroga su facultad de legislar.

## IV

Bajo el Art. III de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, el poder legislativo en nuestro país lo ejerce la Asamblea Legislativa, la cual está compuesta por el Senado y la Cámara de Representantes. Este artículo señala los requisitos, las funciones, las facultades y los procedimientos de dicha rama de gobierno. La función de legislar y enmendar la ley le compete a la Asamblea Legislativa, función compartida con el Poder Ejecutivo.

De los casos *Hernández Torres v. Hernández Colón et al.*, supra, y *Hernández Torres v. Gobernador*, supra, surge claramente que los legisladores tienen legitimación activa

en aquella situación en que se le cause un daño claro e inmediato a *sus prerrogativas legislativas.* La esencia de las prerrogativas legislativas *es la garantía que tiene todo legislador a ejecutar plenamente su derecho constitucional a legislar,* derecho comprendido en la Sec. 1 del Art. III de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. *Hernández Torres v. Hernández Colón et al.,* supra.

En nuestra expresión más reciente sobre el particular, señalamos que los legisladores "como participantes de[l] proceso constitucional de hacer las leyes[,] *tienen legitimación activa para requerir que dicho mecanismo procesal se lleve a cabo, defendiendo así su derecho a legislar".* (Énfasis suplido.) *Noriega v. Hernández Colón,* supra, pág. 436, esc. 30. A esos efectos señalamos que "[l]a acción del Gobernador le ha causado un daño a las prerrogativas legislativas de los aquí demandantes porque estos últimos aprobaron una ley mediante un proceso legislativo válido que contó con la firma del Primer Ejecutivo y la misma fue congelada, haciendo estéril y fútil todo el proceso involucrado". Íd. En *Noriega v. Hernández Colon,* supra, consideramos que la acción del Ejecutivo de detener o no poner en vigor una ley *tenía el efecto práctico de anular una resolución conjunta válidamente aprobada,* tanto por la Asamblea Legislativa como por el Ejecutivo. Ello *dejó sin efecto los votos emitidos por los legisladores* en un ejercicio válido de su poder en un proceso democrático.

En nuestra opinión, los legisladores demandantes tienen legitimación activa para incoar la presente acción. La situación planteada en este caso *es claramente distinguible* de aquellas donde no le hemos reconocido legitimación activa a los legisladores. Aquí la demanda fue presentada por los legisladores *en su carácter oficial y en defensa de su prerrogativa más importante, que es la de legislar.* No se trata aquí de un planteamiento de interés público ni de una situación que remotamente podría en el futuro afectar sus prerrogativas legislativas. Tampoco estamos ante una

situación donde el legislador, luego de involucrarse activamente en el proceso legislativo, pretenda impugnar la constitucionalidad de una ley de cuya aprobación fue partícipe.

En el presente caso de lo que se trata precisamente es de impugnar la validez o legalidad de un *reglamento* cuyo efecto ha sido, alegadamente, enmendar una ley que fue válidamente aprobada durante el proceso legislativo. Entre los recurrentes, algunos eran representantes durante el pasado cuatrienio y votaron a favor de la ley, conforme se alega en los escritos.[1] Se alega que al enmendarse la ley por vía de su reglamento, los votos de estos legisladores son claramente anulados al trastocarse el estatuto y los parámetros establecidos por éste cuando fue aprobada. Se alega, además, que la enmienda de una ley realizada mediante la enmienda al Reglamento que pone en vigor la misma usurpa la función constitucional de la Asamblea Legislativa, menoscabando así la prerrogativa del legislador de votar en el proceso democrático legislativo para enmendar propiamente la ley. En síntesis, sostienen los demandantes que todo ello usurpa la función constitucional del legislador por lo que éste es el llamado a solicitar del tribunal un remedio que salvaguarde adecuadamente sus prerrogativas.

En la consideración de este caso no podemos perder de perspectiva que se trata de la erogación de fondos públicos, además de que los contribuyentes carecen de acción legitimada por la prohibición contenida en la Ley Núm. 2 de 25 de febrero de 1946 (32 L.P.R.A. sec. 3075). En este caso tampoco el Secretario de Justicia podría incoar esta acción, toda vez que es el llamado a representar al Estado y defender la validez y constitucionalidad de la ley. Véase 3 L.P.R.A. sec. 72. Por su parte la Contralor, por la natura-

---

[1] Refiérase a la pág. 3 de la solicitud de revisión, donde se enumeran aquellos recurrentes que eran representantes cuando la ley fue aprobada y que son codemandantes del presente caso.

leza de su función fiscalizadora, carece de legitimación activa para llevar esta acción hasta tanto realice la auditoría correspondiente. Refiérase al Art. III, Sec. 22, Const. E.L.A., *supra*, y a 3 L.P.R.A. sec. 82a.

En la jurisdicción federal, aun ante la ausencia de una doctrina clara y coherente, como explicamos en *Noriega v. Hernández Colón*, supra, págs. 432–433, se le ha reconocido legitimación activa a un legislador particular cuando éste ha demostrado la anulación de un voto pasado o futuro que puede ser razonablemente vinculado con la acción impugnada o cuando otros aspectos esenciales de sus prerrogativas legislativas están implicadas. Véanse: *Kennedy v. Sampson*, 511 F.2d 430 (Cir. D.C. 1974); *Goldwater v. Carter*, 617 F.2d 697 (Cir. D.C. 1979), dejado sin efecto por otras razones en 444 U.S. 996 (1979); *Barnes v. Kline*, 759 F.2d 21 (Cir. D.C. 1985), dejado sin efecto por académico "sub norm" en *Zurke v. Barnes*, 479 U.S. 361 (1967); L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, págs. 152–153. Refiéranse, además, a *Riegle v. Federal Open Market Committee*, 656 F.2d 873 (Cir. D.C. 1981); *Moore v. U.S. House of Representatives*, 733 F.2d 946 (Cir. D.C. 1984); *Bliley v. Kelly*, 23 F.3d 507, 510 (Cir. D.C. 1994); *Boehner v. Anderson*, 30 F.3d 156 (Cir. D.C. 1994).

*En resumen*, los legisladores recurrentes tienen legitimación activa para incoar la presente acción, tanto bajo nuestra jurisprudencia como bajo la jurisprudencia federal. El efecto alegado de las enmiendas al Reglamento de la Ley Núm. 66, *supra*, es enmendar ésta; soslayando así el proceso legislativo para considerar dicha enmienda. Con ello claramente se usurparía la prerrogativa del legislador de votar o no por una enmienda al estatuto. Esto constituiría, además, una anulación del voto de aquellos legisladores que votaron a favor de la aprobación del estatuto e incidiría directamente sobre las prerrogativas del

legislador. A pesar de las normas que hemos establecido para reconocerle legitimación activa a un legislador, en nuestra jurisdicción siempre ha estado accesible el foro judicial para vindicar las prerrogativas de éste como legislador.

Por las razones antes discutidas, entendemos que en el presente caso los recurrentes tienen legitimación activa. Debemos por ello expedir el recurso solicitado para que el tribunal de instancia evalúe en los méritos la controversia de este caso.