EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes de Puerto Rico y Hon. Jesús Santa Rodríguez en su capacidad oficial como Presidente de la Comisión de Hacienda de la Cámara de Representantes<br><br>Recurridos<br><br>v.<br><br>Hon. Francisco Parés Alicea, Secretario del Departamento de Hacienda, en su carácter oficial y como Representante del Gobierno de Puerto Rico y otros<br><br>Peticionarios | Certiorari<br><br>2022 TSPR 14<br><br>208 DPR ____ |

Número del Caso:  CC-2020-214

Fecha: 1 de febrero de 2022

Tribunal de Apelaciones:

    Panel V

Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Carmen A. Riera Cintrón
    Procuradora General Auxiliar

Abogados de la parte recurrida:

    Lcdo. Jorge Martínez Luciano
    Lcdo. Emil Rodríguez Escudero

Materia: Derecho Constitucional: Falta de legitimación activa de la Cámara de Representantes para cuestionar la validez de la actuación del Secretario de Hacienda por entender que ésta modificó el significado de una ley debidamente aprobada.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes de Puerto Rico y Hon. Jesús Santa Rodríguez en su capacidad oficial como Presidente de la Comisión de Hacienda de la Cámara de Representantes<br><br>Recurridos<br><br>v.<br><br>Hon. Francisco Parés Alicea, Secretario del Departamento de Hacienda, en su carácter oficial y como Representante del Gobierno de Puerto Rico y otros<br><br>Peticionarios | CC-2020-214 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 1 de febrero de 2022.

Hoy nos corresponde resolver un cuestionamiento de umbral en torno a la justiciabilidad de un caso instado por unos legisladores a los fines de impugnar la constitucionalidad de cierta actuación del Secretario del Departamento de Hacienda. Particularmente, examinamos si los miembros de la Cámara de Representantes tienen legitimación activa para cuestionar la validez de la actuación del Secretario de Hacienda por entender que ésta modificó el significado de una ley debidamente aprobada. Por los fundamentos que exponemos a continuación, resolvemos que los miembros de dicho cuerpo legislativo carecen de

legitimación activa para instar el referido reclamo.[1]   A continuación, procedemos a narrar los hechos que dieron lugar al presente recurso.

## I

El 16 de enero de 2020, el Hon. Carlos J. Méndez Núñez, Presidente de la Cámara de Representantes en ese entonces, y el Hon. Antonio L. Soto Torres, Presidente de la Comisión de Hacienda del mismo cuerpo legislativo en aquel momento (en conjunto, legisladores o recurridos),[2] presentaron una *Demanda* sobre sentencia declaratoria e interdicto preliminar y permanente en contra del Secretario del Departamento de Hacienda, el Hon. Francisco Parés Alicea (Secretario de Hacienda), y otros, como representantes del Gobierno de Puerto Rico (en conjunto, Gobierno o peticionarios).

En síntesis, los recurridos -en su capacidad individual como legisladores y en representación del mencionado cuerpo legislativo- alegaron que, en virtud de la Ley Núm. 60-2019,

---

[1]   Conviene puntualizar que, aun cuando se puede alegar que la controversia se ha tornado académica por la aprobación de la Ley Núm. 40-2020, nuestra revisión sobre el elemento de legitimación activa dispone del asunto que nos ocupa. El concepto de *mootness* o academicidad "recoge la situación en que, aun cumplidos todos los requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución". (Cita omitida). Com. de la Mujer v. Srio. de Justicia, 109 DPR 715, 724-725 (1980).   En ese sentido, si concluimos que los recurridos carecen de legitimación activa, cualquier pronunciamiento ulterior en torno a la justiciabilidad del caso resultaría innecesario. Véase, por ejemplo, Bhatia Gautier v. Gobernador, 199 DPR 59 (2017).

[2]   Valga señalar que, durante el trámite procesal del caso ante este Foro, el Hon. Carlos J. Méndez Núñez y el Hon. Antonio L. Soto Torres fueron sustituidos por el Hon. Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes, y el Hon. Jesús Santa Rodríguez, en su capacidad oficial como Presidente de la Comisión de Hacienda del mismo cuerpo legislativo (en conjunto, legisladores o recurridos).   Véase *Resolución* de 6 de abril de 2021.

según enmendada, conocida como el *Código de Incentivos de Puerto Rico* (Ley Núm. 60), 13 LPRA sec. 45001 *et seq.*, la Asamblea Legislativa modificó la forma provista a los contribuyentes para presentar las declaraciones informativas sobre los pagos realizados por anuncios, primas de seguros, servicios de telecomunicaciones, servicios de acceso a Internet, y servicios de televisión por cable o satélite (declaraciones informativas). En particular, los legisladores adujeron que el cambio consistió en requerirle a la entidad proveedora de tales servicios, y no al contribuyente que pagaba por éstos, la presentación de las declaraciones informativas ante el Departamento de Hacienda, en o antes del 28 de febrero del año siguiente.[3]

Posteriormente, según destacaron los legisladores, el Secretario de Hacienda promulgó la Determinación Administrativa Núm. 19-08 (Determinación Administrativa). Mediante ésta, el Secretario de Hacienda dispuso que, a manera de excepción para el año calendario 2019,[4] las

---

[3] En lo pertinente, las Secciones 6070.39 y 6070.40 de la Ley Núm. 60-2019, según enmendada, conocida como el *Código de Incentivos de Puerto Rico*, modificaron las Secciones 1063.01 y 1063.16 de la Ley Núm. 1-2011, según enmendada, conocida como el *Código de Rentas Internas para un nuevo Puerto Rico*.

[4] La Exposición de Motivos de la Determinación Administrativa Núm. 19-08 (Determinación Administrativa) establece lo siguiente:

> Luego de la publicación del BI RI 19-09, el Departamento [de Hacienda] recibió de parte de las industrias de seguros y telecomunicaciones, respectivamente, Colegio de Contadores Públicos Autorizados de Puerto Rico ("CCPA") y la Asociación de Industriales de Puerto Rico ("AIPR") varias observaciones y una solicitud para posponer el requisito de [la declaración] informativa requerido en la nueva Sección 1063.16 del Código. Véase Determinación Administrativa, http://www.hacienda.pr.gov/publicaciones/determinacion-administrativa-num-19-08 (última visita, el 5 de octubre de 2021).

declaraciones informativas debían ser presentadas por los contribuyentes pagadores, aplazando así tal exigencia para las entidades proveedoras de los servicios.[5] En desacuerdo, los recurridos enviaron una carta al Secretario de Hacienda, en la cual le solicitaron que dejara sin efecto la Determinación Administrativa por entender que ésta era contraria al texto de la Ley Núm. 60. Sin embargo, el Secretario de Hacienda no revirtió su decisión.

En ese sentido, los legisladores adujeron que la Determinación Administrativa violó el derecho de los ciudadanos a recibir de parte de los proveedores de servicios las declaraciones informativas necesarias para que pudieran acogerse a ciertas deducciones establecidas por ley.[6] Asimismo, aseveraron que la Determinación

---

[5] En específico, la Determinación Administrativa dispone lo siguiente:

.    .    .    .    .    .    .    .

Por tanto, para el año calendario 2019, **la persona responsable por la preparación y radicación del Formulario 480.7E no será la persona o entidad que reciba el pago, sino la persona o entidad que realizó el pago.** Además, conforme a lo dispuesto en el BI RI 19-09, dicho formulario deberá ser radicado únicamente por medios electrónicos a través del Sistema Unificado de Rentas Internas ("SURI").

.    .    .    .    .    .    .    .

**Cabe señalar que esta determinación se hace a manera de excepción únicamente para el año calendario 2019, con el propósito de brindarle a los negocios** de las industrias de seguros, telecomunicaciones y publicidad **tiempo adicional para que puedan trabajar en la programación de sus sistemas y obtener la data necesaria para cumplir con lo establecido en la Sección 1063.16 del Código, según aprobada por la [Ley Núm. 60].** (Énfasis suplido). Determinación Administrativa, http://www.hacienda.pr.gov/publicaciones/determinacion-administrativa-num-19-08 (última visita, el 5 de octubre de 2021).

[6] Véase *Demanda*, Apéndice del *Certiorari*, págs. 55-56.

Administrativa era inconstitucional y *ultra vires* por ser contraria al texto de la Ley Núm. 60, así como violar el principio de separación de poderes.[7]

En vista de ello, los recurridos presentaron la referida *Demanda* para vindicar sus facultades legislativas. Afirmaron que la intervención de los tribunales era fundamental para darle fin a la controversia y disipar la incertidumbre jurídica que representaba para los ciudadanos de Puerto Rico. Por consiguiente, solicitaron que se declarara inconstitucional la actuación del Secretario de Hacienda y, a su vez, exigieron que se le prohibiera a éste poner en vigor la mencionada Determinación Administrativa.

Posteriormente, los peticionarios presentaron una *Moción de desestimación*. En lo pertinente al recurso que nos ocupa, alegaron que los legisladores carecían de legitimación activa, pues no sufrieron un daño claro y palpable ni se afectaron sus prerrogativas legislativas. Expresaron que eran los contribuyentes quienes tenían legitimación activa para presentar cualquier reclamo en contra de la Determinación Administrativa. Por último, el Gobierno aseveró que el Secretario de Hacienda actuó dentro de sus facultades al interpretar las leyes para establecer, desarrollar y coordinar la política pública contributiva conforme al marco jurídico existente.

---

[7] *Íd.*, pág. 55.

Oportunamente, los recurridos presentaron una *Oposición a moción de desestimación*. En su escrito, reiteraron que -a su juicio- la Determinación Administrativa promulgada por el Secretario de Hacienda modificó la Ley Núm. 60. Ante esto, aseveraron que las prerrogativas constitucionales de la Cámara de Representantes fueron menoscabadas. Por otro lado, los legisladores afirmaron tener un interés legítimo en que no se anularan sus votos a favor de la Ley Núm. 60 y en que no se vulnerara su participación en el proceso legislativo ni en el ejercicio de sus funciones constitucionales.

Luego de otras incidencias procesales en las que las partes reafirmaron sus planteamientos sobre los méritos de sus respectivas interpretaciones estatutarias,[8] el Tribunal de Primera Instancia dictó una *Sentencia* el 4 de febrero de 2020. En lo pertinente, acogió las estipulaciones de hechos siguientes:

> .   .   .   .   .   .   .   .
>
> 5.    El 1 de julio de 2019, el entonces Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares, firmó la [Ley Núm. 60], según enmendada, conocida como [el] "Código de Incentivos de Puerto Rico".
>
> 6.    El 4 de septiembre de 2019, el Departamento de Hacienda emitió el Boletín Informativo de Rentas Internas Núm. 1909 ("BI RI 19-09") con el propósito de "notificar la publicación de los formularios de Comprobantes de Retención y Declaraciones Informativas para el año 2019

---

[8]    Véanse: *Réplica a oposición a moción de desestimación*, Apéndice del *Certiorari*, págs. 175-220; *Dúplica a réplica a oposición de desestimación*, Apéndice del *Certiorari*, págs. 221-225.

e informar los cambios más significativos realizados a dichos formularios".

7. El 9 de diciembre de 2019, el Departamento de Hacienda emitió la Determinación Administrativa Núm. 19-08 ("DA 19-08").

8. El propósito del Departamento de Hacienda al emitir la DA 19-08 fue "establecer que, para el año calendario 2019 únicamente, la persona responsable por la preparación y [presentación] del Formulario 480.7E no será la persona o entidad que reciba el pago, sino la persona o entidad que realizó el pago por anuncios, primas de seguros, servicios de telecomunicaciones, servicios de acceso a [I]nternet, servicios de televisión por cable o satélite durante el año".[9]

En síntesis, el tribunal de instancia concluyó que "[n]o hay duda [de] que la Cámara de Representantes o el Senado de Puerto Rico tienen legitimación activa, mediante un representante, de vindicar los poderes que se le[s] concedi[eron] por la Constitución de Puerto Rico y que otra rama de gobierno está usurpando".[10] Por lo tanto, el foro de instancia denegó la solicitud de desestimación presentada por el Gobierno y declaró *Ha Lugar* la *Demanda* instada por los legisladores. De esta forma, decretó la inconstitucionalidad de la Determinación Administrativa dispuesta por el Secretario de Hacienda.[11]

Inconforme, los peticionarios acudieron ante el Tribunal de Apelaciones mediante una *Apelación*. En síntesis,

---

[9] Véase *Sentencia del Tribunal de Primera Instancia*, Apéndice del *Certiorari*, pág. 231

[10] Íd., pág. 242.

[11] Íd., pág. 243.

alegaron que el foro de instancia erró al concluir que la Determinación Administrativa promulgada por el Secretario de Hacienda era *ultra vires*, nula e inconstitucional por violar la separación de poderes que dispone la Constitución de Puerto Rico.[12] Acompañaron la presentación de su recurso con una moción en auxilio de jurisdicción. Así, el 21 de febrero de 2020, el tribunal apelativo intermedio paralizó los efectos de la *Sentencia*. Entre tanto, ordenó *motu proprio* que las partes presentaran sus respectivas posiciones en cuanto a la legitimación activa de los legisladores para solicitar un remedio judicial.

Por consiguiente, los peticionarios presentaron un *Escrito en cumplimiento de orden*. En el mismo, reiteraron que los recurridos no demostraron que sufrieron un daño claro y palpable ni que sus prerrogativas constitucionales fueron vulneradas.[13] Además, señalaron que los legisladores fundamentaron su *Demanda* en una reclamación genérica y abstracta.[14] Por último, el Gobierno adujo que la doctrina de anulación del voto era inaplicable a los hechos particulares del caso.[15]

Por su parte, los recurridos presentaron una *Moción en cumplimiento de orden sobre legitimación activa de los*

---

[12]   Véase *Apelación*, Apéndice del *Certiorari*, pág. 20.

[13]   Véase *Escrito en cumplimiento de orden*, Apéndice del *Certiorari*, pág. 350.

[14]   Íd., pág. 349.

[15]   Íd., págs. 352-353.

*demandantes*. En contraste, argumentaron que estaban facultados por autoridad constitucional y reglamentaria para comparecer en el pleito a nombre de la Cámara de Representantes de Puerto Rico y defender sus prerrogativas constitucionales.[16] Además, reiteraron que -como miembros individuales del mencionado cuerpo legislativo- poseen un interés legítimo en que sus votos a favor de la Ley Núm. 60 no sean anulados.[17]

Así el trámite, el Tribunal de Apelaciones emitió una *Sentencia* confirmando el dictamen apelado. Razonó que el tribunal de instancia no erró al declarar *ultra vires* e inconstitucional la Determinación Administrativa emitida por el Secretario de Hacienda. En cuanto a la justiciabilidad del caso, el foro apelativo intermedio expuso que los recurridos gozaban de legitimación activa puesto que "válidamente impugnan una actuación ilegal de la Rama Ejecutiva que laceró la separación de poderes de nuestra Constitución, específicamente, la facultad de la Asamblea Legislativa de aprobar o enmendar las leyes".[18]

---

[16] Véase *Moción en cumplimiento de orden sobre legitimación activa de los demandantes*, Apéndice del *Certiorari*, pág. 361.

[17] Íd.

[18] Véase *Sentencia del Tribunal de Apelaciones*, Apéndice del *Certiorari*, pág. 393 esc. 4. Por su parte, a través de un Voto disidente, la Jueza Rivera Marchand expresó que los legisladores carecían de legitimación activa para instar la *Demanda*, ya que pudieron ejercitar plenamente su derecho constitucional de legislar. Señaló que la doctrina de la anulación del voto no tiene cabida en la discusión del presente caso, pues la Ley Núm. 60 ya fue aprobada y no existe un proceso legislativo pendiente. Por lo tanto, manifestó que hubiese ordenado la desestimación del caso. Véase *Sentencia del Tribunal de Apelaciones* (Voto disidente de la Jueza Rivera Marchand), Apéndice del *Certiorari*, págs. 413-427.

Aún insatisfechos con la determinación del foro apelativo intermedio, los peticionarios acudieron ante este Tribunal y señalaron como único error lo siguiente:

> Erró el Tribunal de Apelaciones al confirmar la Sentencia emitida por el Tribunal de Primera Instancia habida cuenta [de] que la parte demandante, aquí recurrida, carece de legitimación activa para incoar la Demanda. Por lo tanto, lo que procedía en derecho era decretar la desestimación de la Demanda.

Luego de haber expedido el auto de *certiorari* solicitado, y contando con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

### A. La legitimación activa

El principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial. Ramos, Méndez v. García García, 203 DPR 379, 393-394 (2019); Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 60 (2009); Com. de la Mujer v. Srio. de Justicia, 109 DPR 715, 720 (1980). En ese sentido, hemos reiterado que los tribunales únicamente podemos evaluar los méritos de aquellos casos que sean justiciables. Bhatia Gautier v. Gobernador, 199 DPR 59, 68 (2017); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 931 (2011); E.L.A. v. Aguayo, 80 DPR 552 (1958).

En el examen de las controversias, "los propios tribunales se preguntan y evalúan si es o no apropiado entender en determinado caso tomando en cuenta diversos factores y circunstancias mediante un análisis que les

permite ejercer su discreción en cuanto al límite de su poder constitucional". Com. de la Mujer v. Srio. de Justicia, *supra*, pág. 720. De esta manera, la intervención de los tribunales tendrá lugar sólo si existe una controversia genuina surgida entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. Suárez Cáceres v. Com. Estatal Elecciones, *supra*, pág. 60 (haciendo referencia a E.L.A. v. Aguayo, *supra*, págs. 558-559).

Como elemento necesario para la debida adjudicación de los méritos de una controversia, el principio de justiciabilidad nos impone el deber de evaluar si los demandantes poseen legitimación activa. Hernández Torres v. Gobernador, 129 DPR 824, 835 (1992). Hemos definido la legitimación activa como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". Ramos, Méndez v. García García, *supra*, pág. 394 (citando a Bhatia Gautier v. Gobernador, *supra*, pág. 69).

En esencia, "**el examen de la legitimación activa es un mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado**". (Énfasis suplido y escolio omitido). Hernández Torres v. Hernández

Colón et al., 131 DPR 593, 598 (1992).  Por otra parte,
"**[e]ste elemento de justiciabilidad difiere de los otros
'porque gira principalmente en torno a la parte que prosigue
la acción y sólo secundariamente en cuanto a las cuestiones
a adjudicarse'**".  (Énfasis suplido).  Col. Ópticos de P.R.
v. Vani Visual Center, 124 DPR 559, 564 (1989) (citando a
Com. de la Mujer v. Srio. De Justicia, *supra*, pág. 723).

Al amparo de esta doctrina, la parte que solicita un
remedio judicial debe demostrar que: (1) ha sufrido un daño
claro y palpable; (2) el daño es real, inmediato y preciso,
no abstracto o hipotético; (3) existe una conexión entre el
daño sufrido y la causa de acción ejercitada, y (4) la causa
de acción surge al palio de la Constitución o de una ley.
Bhatia Gautier v. Gobernador, *supra*, pág. 69; Fund.
Surfrider y otros v. A.R.Pe., 178 DPR 563, 572 (2010);
Sánchez et al. v. Srio. de Justicia et al., 157 DPR 360, 371
(2002); Hernández Torres v. Gobernador, *supra*, págs.
835-836.

Por otro lado, hemos expresado que cuando se trate de
una acción en contra de las agencias y los funcionarios
gubernamentales, estos criterios deben interpretarse de
manera flexible y liberal para la parte promovente del
pleito.  Ramos Rivera v. García García, *supra*, pág. 395;
Bhatia Gautier v. Gobernador, *supra*, págs. 69-70.  Ahora
bien, dicha flexibilidad no implica que "la puerta está
abierta de par en par para la consideración de cualquier
caso que desee incoar cualquier ciudadano en alegada

protección de una política pública". <u>Fund. Surfrider y otros v. A.R.Pe.</u>, *supra*, pág. 573; <u>Salas Soler v. Srio. de Agricultura</u>, 102 DPR 716, 723-724 (1974).

**B.  La legitimación activa de los legisladores**

En el caso de los legisladores, éstos deben cumplir con los mismos requisitos que se les exigen a los ciudadanos para demostrar que poseen legitimación activa. <u>Bhatia Gautier v. Gobernador</u>, *supra*, pág. 70. Particularmente, deben establecer que han sufrido un daño claro e inmediato a sus prerrogativas legislativas. <u>Íd.</u> Al cumplir con este requisito, los legisladores tienen que asegurarse de que no están invocando una prerrogativa abstracta y desligada del ejercicio de sus funciones legislativas. <u>Íd.</u> Asimismo, los legisladores tienen que demostrar que existe una conexión entre el daño que alegan haber sufrido y la acción que ejercitan. <u>Íd.</u>, pág. 71.

Según hemos señalado, **las prerrogativas legislativas son la garantía que posee todo legislador a ejercitar plenamente su derecho constitucional a legislar según comprendido en el Art. III, Sec. 1 de la Constitución de Puerto Rico, LPRA, Tomo 1.** <u>Hernández Torres v. Hernández Colón et al.</u>, *supra*, pág. 601. Desde este punto de vista, los tribunales deben quedar convencidos de que se trata de una verdadera lesión a sus prerrogativas legislativas. <u>Íd.</u>

Igualmente, cuando un miembro de la Asamblea Legislativa alega que sus prerrogativas como legislador se han afectado porque no ha podido fiscalizar adecuadamente la obra

legislativa, debe recordar que ello sólo implica los mecanismos razonables y necesarios que posibiliten su participación plena en todas las etapas críticas del proceso legislativo. Bhatia Gautier v. Gobernador, *supra*, págs. 70-71; Hernández Torres v. Hernández Colón et al., *supra*, pág. 602. Además, los legisladores deben agotar todos los remedios que tengan a su disposición antes de acudir a los tribunales para que se les permita y reconozca dicho derecho. Bhatia Gautier v. Gobernador, *supra*, pág. 71; Hernández Torres v. Hernández Colón et al., *supra*, pág. 602.

Al igual que las leyes, toda actuación gubernamental está sujeta a ser interpretada y ser declarada inconstitucional en nuestro sistema constitucional. Véase Hernández Torres v. Hernández Colón et al., *supra*, pág. 602. En ese sentido, hemos expresado que el sujeto activo en la impugnación no puede valerse de una mera alegación de inconstitucionalidad. Íd. Por ende, "[s]u legitimación activa debe estar sustentada a través de todas las etapas procesales del pleito a los efectos de que ha sufrido un daño claro, palpable y no especulativo y cumple con todos los otros requisitos necesarios para el reconocimiento de su legitimación activa". Íd.

A través de la jurisprudencia, hemos reconocido la legitimación activa de un legislador si:

> (1) defiende un interés individual tradicional vinculado con el proceso legislativo e invocado frente a funcionarios del Cuerpo tanto en su carácter particular como en representación de un grupo de ese Cuerpo, **(2) impugna una**

**actuación ilegal del Ejecutivo,**[19] (3) las reglas senatoriales coartan su derecho constitucional de participar en las etapas esenciales y significativas en las comisiones del Cuerpo, (4) cuestiona las reglas senatoriales que impugna el intento del Senado de excluir a un senador de su escaño mientras se determina la validez de su elección, (5) para solicitar un *injunction* y sentencia declaratoria con el objetivo de cuestionar que una persona está ocupando un cargo en detrimento de su poder de confirmación, y (6) vindica su prerrogativa y función constitucional como lo es la participación en el proceso de confirmación de consejo y consentimiento de un nombramiento de un funcionario público. (Cita depurada y énfasis suplido). Ramos, Méndez v. García García, *supra*, págs. 395-396.

Cónsono con ello, recientemente reiteramos que **un legislador posee legitimación activa para vindicar un interés personal en el ejercicio de sus prerrogativas y funciones constitucionales afectadas por el Poder Ejecutivo.** Véase Senado de Puerto Rico v. Tribunal Supremo de Puerto Rico, 2021 TSPR 141, 208 DPR ___ (2021) (haciendo referencia a Noriega v. Hernández Colón, 135 DPR 406, 428 (1994)). Por otra parte, **hemos determinado que un legislador no tiene legitimación activa para presentar una acción en representación de sus votantes o del interés público bajo el reclamo de un perjuicio general a nombre de toda la ciudadanía.** Hernández Torres v. Gobernador, *supra*, págs. 841-842. Véase, además, L.M. Villaronga, *Derecho*

---

[19] En específico, actuaciones del Poder Ejecutivo que limitan las funciones de la Legislatura. Véase, por ejemplo, Noriega v. Hernández Colón, 135 DPR 406, 428 (1994) (reconociendo la legitimación activa de unos legisladores, al Ejecutivo no permitirles adjudicar ciertos fondos asignados por ley).

*constitucional*, 62 Rev. Jur. UPR 683, 689-692 (1993).  En tales circunstancias, **"[c]orresponde a los ciudadanos directamente perjudicados por [esa] acción, que hayan sufrido un daño claro y palpable, recurrir a los tribunales en defensa de sus intereses".[20]**   (Énfasis suplido). Hernández Torres v. Gobernador, *supra*, pág. 843.

Por otro lado, considerando la normativa establecida en Raines v. Byrd, 521 US 811 (1997),[21] expresamos los criterios que deben considerarse para reconocer la legitimación activa de un legislador cuando reclama que la efectividad de su voto ha sido anulada.  Véase Ramos, Méndez v. García García, *supra*, págs. 406-407.  Allí destacamos lo siguiente sobre el precitado caso federal:

> En lo pertinente al reclamo de la efectividad de la votación, los legisladores argumentaron que la ley promulgada causó un tipo de daño institucional en la medida que resultó en una disminución del Poder Legislativo que necesariamente provocaba un daño a los legisladores del Congreso. Asimismo, alegaron que ostentaban legitimación activa basado en la pérdida del poder político y no en la pérdida de un derecho personal.

---

[20]  A esos efectos, el profesor Luis M. Villaronga comenta lo siguiente:

**La existencia de personas realmente agraviadas por la conducta del gobierno ciertamente justifica el que no se le confiera a los legisladores legitimación para cuestionar asuntos constitucionales trascendentales, sobre todo cuando han tenido la oportunidad de participar en el proceso que culminó en la aprobación del asunto.**  (Énfasis suplido). L.M. Villaronga, Derecho Constitucional, 62 Rev. Jur. 683, 694 (1993).

[21]  En este caso, el Tribunal Supremo federal examinó las alegaciones y las particularidades del caso para resolver si, en efecto, se anuló la efectividad del voto de los legisladores.  Véase Raines v. Byrd, 521 US 811 (1997).

Por lo señalado, **el Tribunal Supremo de Estados Unidos determinó que los demandantes no tenían** *standing* **precisamente porque el daño era institucional y no lo suficientemente concreto y personal porque los congresistas poseían un remedio político adecuado en la medida que posteriormente podían votar para derogar el estatuto** o para proporcionar proyectos de ley de gastos individuales con una exención legal. (Énfasis en el original suprimido y énfasis suplido). Ramos, Méndez v. García García, *supra*, pág. 402 (haciendo referencia a Raines v. Byrd, *supra*, pág. 829).

Observando la tendencia en la jurisprudencia federal, señalamos que cuando "el legislador reclama la anulación de la efectividad de su voto, cumple con el *test* y no tiene un remedio legislativo adecuado ni otra persona puede impugnar la actuación legislativa, tiene derecho a presentar la causa de acción" (es decir, *standing*). Ramos, Méndez v. García García, *supra*, pág. 406.

De esta manera, establecimos que los legisladores que reclaman que la efectividad de su voto ha sido anulada deben alegar lo siguiente:

(1) que hubo una votación de un proyecto de ley o una resolución conjunta o concurrente o nombramiento específico; (2) que, luego de la votación, los votos sean suficientes para aprobar o derrotar la medida, la resolución o el nombramiento; (3) [que] en la votación, sus votos se consignaron y contabilizaron plenamente; (4) que el proyecto de ley sea aprobado, pero considerado rechazado por el cuerpo legislativo o viceversa; (5) [que] luego de aprobada o derrotada no haya un remedio legislativo que permita derogar la medida, la resolución o el nombramiento; (6) que el resultado de la aprobación o del rechazo tuvo el efecto de anular completamente el voto. (Escolio omitido). Ramos, Méndez v. García García, *supra*, pág. 407.

**III**

Nos corresponde determinar, como asunto de umbral, si los recurridos demostraron haber sufrido una lesión concreta en cuanto a sus prerrogativas legislativas en virtud de la actuación del Secretario de Hacienda. Luego de un análisis riguroso de los hechos particulares de este caso, los argumentos presentados y el derecho esbozado, determinamos que los legisladores carecen de legitimación activa, en su capacidad individual y como representantes del cuerpo legislativo, para impugnar la actuación del Secretario de Hacienda, pues no demostraron haber sufrido una lesión concreta en cuanto a sus prerrogativas legislativas o sus funciones constitucionales.**22**   Veamos.

Los recurridos señalan que "en el presente caso, el Secretario de Hacienda, Hon. Francisco Parés Alicea[,] aprobó la [Determinación] Administrativa Número 19-08, la cual es manifiestamente incompatible con el mandato expreso

---

**22** En el *Alegato del Presidente de la Cámara de Representantes de Puerto Rico y del Presidente de la Comisión de Hacienda de ese cuerpo legislativo*, pág. 2, los recurridos adujeron lo siguiente:

> [S]i bien es cierto que los Honorables Carlos Méndez N[ú]ñez y Antonio Soto Torres fueron reelectos el pasado 3 [de] noviembre [de] [2020] para continuar representando sus respectivos distritos legislativos, [é]stos han sido sustituidos automáticamente en su capacidad oficial en lo que respecta a sus antiguas posiciones de liderato como Presidente de la Cámara de Representantes y de la Comisión de Hacienda de ese Cuerpo. Así las cosas, toda vez que los representantes antes mencionados incoaron la presente acción tanto en su capacidad de miembros de la Cámara (estatus que conservan al día de hoy) como a título de sus antiguas posiciones de liderazgo, respetuosamente entendemos que continúan siendo parte en cuanto a la primera reclamación, siendo sustituidos por los aquí comparecientes en cuanto a la segunda.

de la [Ley Núm. 60]".[23]  Particularmente, alegan que el Secretario de Hacienda -sin autoridad para ello- "determinó unilateralmente [y contrario a lo dispuesto en la Ley Núm. 60] que será responsabilidad de la persona o entidad que realizó pagos por anuncios, primas de seguros, servicios de telecomunicaciones, servicios de acceso a [I]nternet y servicios de televisión por cable o satélite, [la] [presentación] [d]el formulario 480.7E en o antes del 28 de febrero de 2020".  (Énfasis en el original suprimido).[24] Amparados en esta premisa, los legisladores instaron la *Demanda* de referencia a los fines de que se prohibiera la actuación del Secretario de Hacienda y se decretara su inconstitucionalidad, por presuntamente ser *ultra vires* y contraria al mandato estatutario establecido por la Asamblea Legislativa en la Ley Núm. 60.  Valga señalar que la causa de acción de los recurridos se fundamentó en que sus prerrogativas legislativas fueron menoscabadas y sus votos fueron anulados como resultado de la mencionada actuación del Secretario de Hacienda.

Como regla general, hemos reconocido la legitimación activa de los legisladores cuando se han afectado sus poderes críticos, tales como: la falta de participación en debates legislativos; la limitación a la facultad de consentir nombramientos, o la anulación del voto

---

[23]  Íd.

[24]  Véase *Demanda, Apéndice del Certiorari*, pág. 47.

legislativo. Dicho esto, los recurridos no lograron establecer en qué manera fueron privados de ejercer plenamente sus prerrogativas legislativas o se vieron afectadas sus funciones constitucionales.

Según expresamos, las referidas prerrogativas constituyen la garantía que posee todo legislador de ejercitar plenamente su derecho a legislar conforme al Art. III, Sec. 1 de la Constitución de Puerto Rico, *supra*.[25] Del mismo modo, indicamos que el derecho a fiscalizar sólo implica los mecanismos necesarios que viabilizan la participación plena de los legisladores en las etapas críticas del proceso legislativo.

**Claramente, no está en disputa que, el 1 de julio de 2019, el entonces Gobernador de Puerto Rico firmó la Ley Núm. 60. Como cuestión de hecho, los legisladores tuvieron la oportunidad de participar en el proceso legislativo y consiguieron ejercer plenamente su derecho constitucional de legislar. Una vez se aprobó la referida ley como corresponde, finalizó cualquier interés que los recurridos hubiesen podido tener con relación a su participación en el proceso legislativo.[26]**

---

[25]  El Art. III, Sec. 1 de la Constitución de Puerto Rico, 1 LPRA Tomo 1, dispone lo siguiente:

> El Poder Legislativo se ejercerá por una Asamblea Legislativa, que se compondrá de dos Cámaras -el Senado y la Cámara de Representantes- cuyos miembros serán elegidos por votación directa en cada elección general.

[26]  El profesor William Vázquez Irizarry comenta que "una vez se aprueba una medida y la misma se convierte en ley, no hay rol alguno posterior para la Legislatura[,] pues lo que queda por hacer es precisamente la 'ejecución' del estatuto". W. Vázquez Irizarry, *Los poderes del*

De otra parte, si bien la Determinación Administrativa promulgada por el Secretario de Hacienda se encuentra reñida con el texto de la Ley Núm. 60, ello no presupone de por sí una usurpación del proceso legislativo ni constituye una restricción a la facultad de la Asamblea Legislativa de aprobar o enmendar las leyes. Esto, pues la Determinación Administrativa no trastocó la participación plena de los legisladores en las etapas críticas del proceso legislativo ni tampoco tuvo un efecto sobre la aprobación del mencionado estatuto. Más aún, según adujeron los propios recurridos en su *Demanda*, la Determinación Administrativa tendría el efecto práctico de perjudicar a los ciudadanos. En última instancia, la controversia de fondo versa sobre un asunto de interpretación estatutaria que le corresponde adjudicar a los tribunales una vez el ciudadano perjudicado impugne el efecto de dicha interpretación. De este modo, la acción instada por los legisladores en alegada protección del mandato estatutario -sin tan siquiera ser los beneficiarios del mismo- representa un reclamo en defensa de un interés general. Ante ello, reiteramos la norma jurisprudencial de que los legisladores no pueden acudir a los tribunales en representación de sus constituyentes o bajo el reclamo de un perjuicio general a nombre de toda la ciudadanía. Véase Hernández Torres v. Gobernador, *supra*, págs. 841-842.

---

*Gobernador de Puerto Rico y el uso de órdenes ejecutivas*, 76 Rev. Jur. UPR 951, 998 (2007).

**Lo expresado no implica que el Poder Ejecutivo tenga la facultad de obrar en contra de un estatuto debidamente aprobado, pero de ello ocurrir, le corresponde a las personas o entidades afectadas de manera concreta promover sus reclamos. Por consiguiente, una parte directamente afectada por la actuación del Secretario de Hacienda sí puede acudir a los tribunales, siempre que cumpla con los requisitos clásicos de legitimación activa. De esta forma, nos aseguramos de ejercer válidamente el Poder Judicial dentro del marco de un caso o controversia real.**

Los legisladores no están exentos de cumplir con los mismos requisitos que se les exigen a los ciudadanos particulares para demostrar que poseen legitimación activa. De ahí que, para validar su legitimación activa, los recurridos no podían valerse de una mera alegación de inconstitucionalidad. En cambio, tenían que sustentar la existencia de un daño claro, palpable e inmediato en cuanto a sus prerrogativas legislativas, así como la concurrencia de todos los requisitos necesarios para el reconocimiento de su legitimación activa.

En consecuencia, resolvemos que los recurridos **no** poseían legitimación activa para cuestionar la validez de la Determinación Administrativa en cuestión por entender que la misma era contraria al texto de una **ley debidamente aprobada**. Ante ese escenario, las personas perjudicadas que cumplan con los requisitos clásicos de legitimación activa serán las llamadas a cuestionar su validez. Por lo tanto,

concluimos que erró el foro apelativo intermedio al no decretar la desestimación de la *Demanda* por falta de legitimación activa de los recurridos.

**IV**

A base de lo anterior, se revoca tanto la *Sentencia* del Tribunal de Apelaciones como la *Sentencia* emitida por el Tribunal de Primera Instancia. Por consiguiente, se desestima el presente caso por falta de legitimación activa de los recurridos.

Se dictará Sentencia de conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes de Puerto Rico y Hon. Jesús Santa Rodríguez en su capacidad oficial como Presidente de la Comisión de Hacienda de la Cámara de Representantes<br><br>Recurridos<br><br>v.<br><br>Hon. Francisco Parés Alicea, Secretario del Departamento de Hacienda, en su carácter oficial y como Representante del Gobierno de Puerto Rico y otros<br><br>Peticionarios | CC-2020-214 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de febrero de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones emitida el 28 de febrero de 2020 y la Sentencia emitida por el Tribunal de Primera Instancia el 4 de febrero de 2020.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con Opinión escrita. El Juez Asociado señor Rivera García concurre sin Opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes de Puerto Rico y Hon. Jesús Santa Rodríguez en su capacidad oficial como Presidente de la Comisión de Hacienda de la Cámara de Representantes<br><br>Recurridos<br><br>v.<br><br>Hon. Francisco Parés Alicea, Secretario del Departamento de Hacienda, en su carácter oficial y como Representante del Gobierno de Puerto Rico y otros<br><br>Peticionarios | CC-2020-0214 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 1 de febrero de 2022.

En esta ocasión, correspondía atender y contestar en los méritos la siguiente interrogante: ¿Tiene el Secretario de Hacienda el poder de posponer la fecha en que entrará en vigor una ley **y** ejecutarla de manera contraria al mandato legislativo? Sin embargo, este Tribunal tropezó con la barrera de la aplicación incorrecta de la legitimación activa.

Con este proceder, totalmente contrario a la noción y el alcance con el que debe aplicarse la doctrina de la legitimación activa, ignoraron que esa acción del Ejecutivo constituyó una lesión concreta a las prerrogativas y funciones constitucionales delegadas a la Asamblea Legislativa. Por tanto, procedía reconocer la legitimación activa de los legisladores promoventes, para cuestionar, en su carácter individual y en representación de la Cámara de Representantes, una acción ultra vires del Poder Ejecutivo.

Particularmente, ante el hecho de que la actuación del Secretario de Hacienda de posponer la entrada en vigor y enmendar una disposición de ley mediante decreto administrativo es patentemente inconstitucional y constituye una lesión concreta a las prerrogativas y funciones constitucionales de los legisladores, lo cual habilita la justiciabilidad de esta controversia.

Al una Mayoría resolver lo contrario y, con ello, descartar nuestros pronunciamientos reiterados en cuanto a que, cuando se trata de acciones en contra de funcionarios gubernamentales, los tribunales tienen el deber interpretar los criterios de legitimación de la manera más flexible, liberal y favorable para el promovente del litigio, disiento. Veamos, entonces, los fundamentos de mi disenso.

## I

De ordinario, una controversia no es justiciable si el promovente de la acción carece de legitimación activa

(standing).[1] De conformidad con esta doctrina, la parte demandante debe procurar que su interés sea "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". Ramos, Méndez v. García García, 203 DPR 379, 394 (2019).

Para ello, el demandante debe demostrar: "(1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley". Torres Montalvo v. Gobernador ELA, 194 DPR 760, 767 (2016) (citando a Hernández Torres v. Gobernador, 129 DPR 824, 836 (1992).

En el caso particular de los cuerpos legislativos, éstos tienen acción legitimada para comparecer por sí o para autorizar a uno de sus miembros o comisiones para representarlos en los tribunales en pro de sus intereses. Hernández Torres v. Gobernador, supra, pág. 837 (citas omitidas). Lo anterior, sin embargo, no los exime de cumplir

---

[1]Adviértase, que la doctrina de la legitimación activa no constituye un imperativo constitucional. Por tanto, no existe impedimento para que la Asamblea Legislativa otorgue legitimación activa a cualquier persona, tal y como lo ha hecho en el pasado. Véase, J. Farinacci Fernós, Cualquier persona: la facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria, 84 Rev. Jur UPR 359 (2015); Brito Díaz et al. v. Bioculture et al., 183 DPR 721, 732 (2011) (Voto de conformidad del Juez Asociado Señor Estrella Martínez).

con los requisitos tradicionales de standing. Ramos, Méndez v. García García, supra, pág. 395.

Ahora bien, "[c]uando la causa de acción se presenta en contra de agencias y funcionarios gubernamentales, los tribunales interpretarán los criterios de la legitimación activa de manera flexible y liberal, y el análisis de las alegaciones se debe hacer de la manera más favorable y liberal para el promovente del litigio". (Énfasis suplido). Íd. **Ello, pues, el factor determinante no es quién es el promovente, sino en contra de quien se entabló la causa de acción.**

Bajo este marco doctrinal, hemos reconocido que un **legislador tiene** legitimación activa, entre otros escenarios, cuando: (1) **impugna una acción ilegal del ejecutivo** y, (2) **vindica sus prerrogativas y funciones constitucionales**. Véanse, Senado v. Tribunal Supremo de Puerto Rico, 2021 TSPR 141, pág. 5, 208 DPR __ (2021); Noriega v. Hernández Colón, 135 DPR 406, 428 (1994).

Pese a lo anterior, una mayoría de este Tribunal falla en no reconocerle legitimación activa a los legisladores —en su capacidad individual y como representantes del cuerpo legislativo— por razón de que, según su criterio, éstos no sufrieron una lesión concreta a sus prerrogativas legislativas o sus funciones constitucionales. **Esta interpretación es patentemente errónea.** Veamos.

## II

Distinto a lo que resuelve la Opinión Mayoritaria, las prerrogativas y funciones constitucionales no son una lista numerus clausus limitada a "la garantía que posee todo legislador de ejercitar plenamente su derecho a legislar" de manera que, una vez se aprueba la ley, "finalizó cualquier interés que los [legisladores] hubiesen podido tener con relación a su participación en el proceso legislativo".[2]

Desde Noriega v. Hernández Colón, supra, delineamos los contornos de los poderes que la Constitución de Puerto Rico le confirió tanto al Legislativo y como al Ejecutivo con respecto a la creación de leyes y la facultad de ponerlas en vigor. Allí, al analizar una controversia relacionada con la inacción del entonces gobernador a ejecutar una ley debidamente aprobada, este Tribunal determinó que tal conducta constituía un daño a las prerrogativas de la Asamblea Legislativa y, por consiguiente, reconoció la legitimación activa de los legisladores promoventes. Particularmente, este Foro dispuso que:

> Los legisladores-recurrentes del P.P.D. —como participantes de este proceso constitucional de hacer las leyes— tienen legitimación activa para requerir que dicho mecanismo procesal se lleve a cabo, defendiendo así su derecho a legislar. **La acción del Gobernador le ha causado un daño a las prerrogativas legislativas de los aquí demandantes porque estos últimos, aprobaron una ley mediante un proceso**

---

[2]Véase, Opinión mayoritaria, pág. 20.

> **legislativo válido, que contó con la firma del Primer Ejecutivo, y la misma fue congelada, haciendo estéril y fútil todo el proceso envuelto.** La acción del Gobernador de detener, congelar o no poner en vigor una ley, **tiene el efecto práctico de anular** una resolución conjunta *válidamente aprobada* por la Asamblea Legislativa y, el Primer Ejecutivo, por la cual los aquí demandantes votaron a favor. **Tal proceder dejó sin efecto los votos emitidos mediante un ejercicio válido del poder legislativo en un proceso democrático.** (Cita depurada y negrillas suplidas). Íd., pág. 436 esc. 30.

Según se desprende del párrafo precitado, este Tribunal reconoció que el tipo de prerrogativas constitucionales que, si son afectadas, justifican la legitimación de un legislador no se limita a los supuestos clásicos que inciden sobre la facultad de nombramientos, participación en debates legislativos o comisiones, ocupación de un escaño y situaciones similares.[3] En su lugar, concluyó que también se incluyen aquellas instancias en las que el gobernador incumple con su deber ministerial de hacer cumplir la ley y también cumplirla, según dispuesto en la Constitución.

En ese sentido, el Prof. Hiram Meléndez Juarbe, al analizar lo resuelto en Noriega v. Hernández Colón, supra, destaca que el derecho a legislar se ve afectado "cuando habiendo votado y participado se priva (alegadamente) a su

---

[3]H. Meléndez Juarbe, Derecho constitucional, 75 Rev. Jur. UPR 29, 60 (2006).

voto y participación del efecto que la Constitución ordena que tenga".[4] En Noriega, la actuación del gobernador concretizó la legitimación activa de los legisladores, pues ocasionó un daño en las prerrogativas constitucionales básicas del Poder Legislativo, a saber: **"participar del proceso legislativo con el efecto que la Constitución atribuye a dicha participación"**.[5] Es por esto que, "[c]uando el daño constitucional alegado es que, aun consignándose su voto, ese voto no tuvo el efecto deseado por la Constitución existe un planteamiento de daño constitucional serio".[6]

En reconocimiento de ello, recientemente en Ramos, Méndez v. García García, supra, "reiteramos la norma de que el legislador posee standing para vindicar su interés personal en cuanto al ejercicio de sus prerrogativas, **tanto directa como derivada**". (Negrillas suplidas). Íd., pág. 400.

Examinados los contornos normativos, veamos, entonces, los hechos que dan lugar a la controversia ante nos.

**III**

En el 2019, la Asamblea Legislativa aprobó la Ley Núm. 60-2019, conocida como el Código de Incentivos de Puerto Rico, 13 LPRA sec. 45001 et seq. (Ley Núm. 60). Con ello,

---

[4]Íd., pág. 60.

[5](Negrillas suplidas). Íd.

[6]Íd.

modificó la forma provista que imponía en los <u>contribuyentes</u> el deber de presentar las declaraciones informativas sobre los pagos realizados por anuncios, primas de seguros y ciertos servicios (declaraciones informativas). Así, con la aprobación de la ley, se le removió el deber a los contribuyentes de suplirlas y, en su lugar, se le impuso la obligación de presentar tales declaraciones informativas a las <u>entidades</u> proveedoras de los servicios.

Posteriormente, el Secretario del Departamento de Hacienda, mediante la Determinación Administrativa Núm. 19-08, <u>unilateralmente y en contravención</u> a lo establecido en la Ley Núm. 60, <u>supra</u>, **pospuso** la fecha de efectividad de la ley y, además, **revirtió** sobre en quién recaía la obligación de presentar las declaraciones informativas. En cuánto a esto último, resáltese que, a pesar de que la Ley Núm. 60, <u>supra</u>, dispone que tal obligación recaerá en la entidad que provee los servicios, la Determinación Administrativa impuso que le correspondería al individuo.

A raíz de lo anterior, la controversia aquí planteada se circunscribe a determinar si el Presidente de la Cámara de Representantes y el Presidente de la Comisión de Hacienda del mismo cuerpo legislativo —en su capacidad individual como legisladores y en representación de la Cámara— poseen legitimación activa para cuestionar la implementación de un decreto administrativo por parte del Secretario del

Departamento de Hacienda que es contrario a una ley debidamente aprobada por la Asamblea Legislativa.[7]

Según adelanté, esta controversia exigía que nos preguntáramos lo siguiente: ¿Tiene el Secretario de Hacienda el poder de posponer la fecha en que entrará en vigor una ley **y** ejecutarla de manera contraria al mandato legislativo? **Evidentemente no.** Ahora bien, en caso de que lo haga, ¿ello configura una lesión concreta a los legisladores en virtud de las prerrogativas y funciones constitucionales delegadas a la Asamblea Legislativa? **Indudablemente sí.**

Discutiremos, pues, el fundamento de cada una de las respuestas.

En primer lugar, reiteradamente hemos señalado que "nuestro sistema constitucional es de pesos y contrapesos, 'con el propósito de generar un equilibrio dinámico entre poderes coordinados y de igual rango, y evitar así que ninguno de éstos amplíe su autoridad a expensas de otro'". Senado de PR v. ELA, 203 DPR 62, 84 (2019) (citas omitidas).

Con el fin de precisar qué facultades corresponden a cada Poder y, consecuentemente, determinar si se ha

---

[7]Adviértase que, a pesar de los cambios acaecidos durante la tramitación de la controversia, ésta no es académica por razón de cumplirse más de una de las excepciones a la doctrina de la academicidad. Particularmente, pues, es innegable que estamos ante un caso con una alta probabilidad de recurrencia entre las mismas partes y, máxime, debido al riesgo potencial de que el daño sea de tan corta duración que sea probable que la controversia se torne académica antes de que la litigación se complete. Véase, Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 933-934 (2011).

configurado una violación de la doctrina de separación de poderes, debe evaluarse:

> (1) si la función específica ha sido expresamente asignada por la Constitución a la rama gubernamental que trata de ejercitarla, o (2) si su ejecución por tal rama es un incidente necesario para el ejercicio de otras funciones que le fueron expresamente conferidas. Noriega v. Hernández Colón, supra, pág. 473 (Opinión de conformidad del Juez Asociado Señor Hernández Denton) (citas omitidas).

Nótese que el análisis a realizarse exige que se identifique si la función en cuestión fue delegada al Poder que lo ejercita o, si, por el contrario, su ejecución es un incidente necesario para otras funciones expresamente otorgadas en virtud de la Constitución de Puerto Rico.

En ese sentido, bajo el esquema de separación de poderes, la Constitución de Puerto Rico "delega todo el poder legislativo a la Asamblea Legislativa, sujeto a las limitaciones contenidas en su Carta de Derechos". Guzmán v. Calderón, 164 DPR 220, 304 (2005).[8] Por su parte, el gobernador ostenta "la facultad y, a la vez, el deber y la obligación, de acuerdo con el Art. IV, Sec. 4 de la [Constitución,] de cumplir y poner en vigor las leyes vigentes, y de hacerlas cumplir y poner en vigor a través

---

[8]Asimismo, la Constitución dispone que el poder "para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. PR., LPRA, Tomo 1.

de todos aquellos funcionarios que están bajo su poder". Guzmán v. Calderón, supra.

No cabe duda de que la Legislatura puede delegar en el Poder Ejecutivo funciones legislativas siempre y cuando medie un principio inteligible que viabilice que el Ejecutivo actúe dentro de los parámetros concebidos en la ley habilitadora. Véase, Sánchez et al. v. Depto. Vivienda et al., 184 DPR 95, 119-122 (2011). Ello, sin embargo, no fue lo que ocurrió aquí.

Según enuncié, la Determinación Administrativa postergó la vigencia de la ley y transfirió a los individuos el deber de presentar las declaraciones informativas, evidentemente es un acto ultra vires por parte del Poder Ejecutivo. Lo que es peor, la actuación del Secretario de Hacienda ocurrió luego de que la Cámara de Representantes presentara un proyecto de ley con idénticos propósitos que fue derrotado en el proceso legislativo mediante el veto de bolsillo de la gobernadora en aquel entonces.[9]

Ciertamente, la Determinación Administrativa usurpó los poderes de la Asamblea Legislativa y, además, representó una transgresión del Ejecutivo a su deber constitucional de cumplir y hacer cumplir la Ley Núm. 60, supra. Guzmán v. Calderón, supra. Ello, pues, tal proceder no reflejó ser una

---

[9]Véase, Informe Comité de Conferencia de 19 de noviembre de 2019 del P. de la C. 2172, 6ta Ses. Ord., 18va Asam. Leg., https://sutra.oslpr.org/osl/esutra/MedidaReg.aspx?rid=130169 (última visita, 28 de enero de 2022).

implementación de la ley existente por el Secretario de Hacienda, sino que, por el contrario, constituyó un ejercicio legislativo reservado por nuestra Constitución a la Legislatura. **Dicho de otro modo, la Determinación Administrativa impuesta por el Secretario de Hacienda se abrogó el mandato de la Ley Núm. 60, <u>supra</u>, y, además, infringió la doctrina de separación de poderes.**

Ahora bien, ante el curso de acción mayoritario, nos corresponde determinar si tal actuación constituye una lesión concreta que viabilice que los legisladores de la Cámara de Representantes, en su carácter individual o institucional, prosigan su causa de acción vigorosamente. <u>Ramos, Méndez v. García García</u>, supra, 394. **Lo anterior, máxime, bajo el crisol de que reiteradamente hemos resuelto que cuando se trata de una acción en contra de funcionarios gubernamentales, los criterios de legitimación activa deben interpretarse de la manera más <u>flexible</u>, <u>liberal</u> y <u>favorable</u> para el promovente del litigio.** Íd., pág. 395.

Ante ello, la Opinión mayoritaria desacertadamente determina que "[u]na vez se aprobó la referida ley como corresponde, finalizó cualquier interés que [los legisladores] hubiesen podido tener con relación a su participación en el proceso legislativo".[10] De esta forma, concluye que los legisladores "no demostraron haber sufrido una lesión concreta en cuanto a sus prerrogativas

_____

[10]Véase, <u>Opinión mayoritaria</u>, pág. 20.

legislativas o sus funcionales constitucionales".[11] Ésto, sin embargo, se aleja de los pronunciamientos previos de este Tribunal.

De entrada, resaltamos que este Tribunal ha concedido legitimación activa a los legisladores cuando éstos impugnan una actuación ilegal del Ejecutivo o vindican sus prerrogativas y funciones constitucionales. Véanse, Senado v. Tribunal Supremo de Puerto Rico, supra, pág. 5; Noriega v. Hernández Colón, supra, pág. 428.

Desde Noriega v. Hernández Colón, supra, pautamos que una actuación en contrario del Gobernador sobre una ley debidamente aprobada configura un daño que viabiliza conceder legitimación activa al legislador para impugnar tal actuación. Particularmente, en Noriega estimamos que:

> **La acción del Gobernador le ha causado un daño a las prerrogativas legislativas de los aquí demandantes porque estos últimos, aprobaron una ley mediante un proceso legislativo válido, que contó con la firma del Primer Ejecutivo, y la misma fue congelada, haciendo estéril y fútil todo el proceso envuelto.** (Negrillas y énfasis suplido). Íd., pág. 436 esc. 30.

Estos pronunciamientos constituyen un reconocimiento de que el derecho a legislar conferido tanto a los legisladores del Senado como los de la Cámara de Representantes se afecta cuando, habiendo votado y

---

[11]Id., pág. 18.

participado del proceso legislativo, se priva a su voto y participación del efecto que la Constitución ordena que tenga.[12] Íd.

En el caso ante nos, no tan sólo se trata de, como ocurrió en Noriega, que el Ejecutivo se niega a implementar una ley debidamente aprobada, sino que, lo que es peor, estamos ante una acción afirmativa de este último de, mediante decreto administrativo, enmendar una ley con el propósito de **posponer** su implementación y **alterar** el mandato expreso de la Asamblea Legislativa. Ello, pues, **transfirió** el deber de la presentación de las declaraciones informativas a quien el legislador, a todas luces, quiso liberar. **Este proceder es impermisible.**

Tal y como correctamente concluyó el Tribunal de Apelaciones,[13] la Ley Núm. 60, supra, estableció, sin atisbo alguno de ambigüedad, que la persona obligada a presentar las declaraciones informativas es el proveedor del servicio y no el individuo que se beneficia de ellos.

El Secretario de Hacienda no tiene la facultad de alterar la voluntad legislativa mediante decretos administrativos. Este poder no le fue específicamente delegado por la Constitución y su ejecución tampoco es un incidente necesario para el ejercicio de otras funciones

---

[12]Meléndez Juarbe, supra, pág. 60.

[13]Véase, Sentencia del Tribunal de Apelaciones emitida por el presidente del Panel el Juez Bermúdez Torres y la Jueza Domínguez Irizarry. Por otra parte, la Jueza Rivera Marchand emitió un voto disidente.

expresamente conferidas. Noriega v. Hernández Colón, supra, pág. 473. Toda vez que así lo hizo, se configuró una lesión concreta a las prerrogativas y funciones constitucionales de los legisladores promoventes en su capacidad individual y como representantes institucionales de la Cámara de Representantes.

En este contexto, la legitimación activa de los legisladores promoventes es patente. No es contestación, como establece una mayoría de este Tribunal, que se trata de un daño generalizado que debe ser encausado por la ciudadanía.[14] ¿O es que, acaso, puede un ciudadano particular promover, de manera más vigorosa que un legislador, una violación al principio de separación de poderes? **Claramente, la respuesta es en la negativa.**

Es el legislador en su capacidad individual y como representante institucional de la Cámara de Representantes quien está en mejor posición para vindicar el menoscabo en sus prerrogativas y funciones constitucionales. Particularmente, en virtud de Noriega v. Hernández Colón, puesto que, habiendo éstos votado y participado del proceso legislativo que culminó con la aprobación de la Ley Núm. 60, supra, luego, con la implementación de la Determinación Administrativa, se privó a su voto y participación del efecto que la Constitución ordena que tenga.[15] Evidentemente,

---

[14]Véase, Opinión mayoritaria, págs. 21-22.

[15]Meléndez Juarbe, supra, pág. 60.

el daño claro, palpable y real se materializó, pues la Determinación Administrativa **nulificó** el mandato de política pública establecido en la Ley Núm. 60, supra.

Debido a lo anterior, los promoventes impugnaron la validez de la actuación del Secretario de Hacienda, la cual, según he expresado, enmendó, por la vía administrativa, una ley válidamente aprobada durante el proceso legislativo. Con este proceder, se soslayó el proceso legislativo compartido entre la Cámara y el Senado para considerar esa enmienda y, consecuentemente, se usurpó la prerrogativa del legislador de votar o no por una enmienda al estatuto. Véase, Acevedo Vilá v. Corrada del Río, 138 DPR 886, 902 (1995) (Opinión disidente del Juez Asociado Señor Alonso Alonso) (Resolución en reconsideración).

Contrario a la Mayoría, estimo que el hecho de que la Legislatura, al igual que la ciudadanía, pueda cuestionar la actuación ultra vires del Secretario de Hacienda, no es razón para denegarle standing a los legisladores promoventes. **Es innegable que los legisladores —tanto en su capacidad individual como representantes de la Cámara como institución— tienen más interés en mantener su poder legislativo que el propio interés de la ciudadanía en que se respeten las prerrogativas y funciones de la Legislatura.**

Estoy convencido de que la acción instada por los legisladores no es un subterfugio para trasladar el debate legislativo al foro judicial y, en su lugar, se trata de un reclamo que procura vindicar una verdadera lesión a sus

prerrogativas y funciones constitucionales. Hernández Torres v. Hernández Colón et al., 131 DPR 593, 601 (1992). Es incuestionable que "[n]o nos encontramos ante asuntos abstractos e hipotéticos. Una mayoría de este Tribunal no debió pasar por alto la realidad de los daños específicos a los que se exponen los [legisladores]". Muns. Aguada y Aguadilla v. JCA, 190 DPR 122, 148 (2014) (Expresión disidente del Juez Asociado Señor Estrella Martínez).

**En fin, no podemos refrendar la actuación del Secretario de Hacienda implica validar que el Ejecutivo se abrogue la facultad constitucional de la Asamblea Legislativa en la derogación, enmiendas o aprobación de los proyectos de ley.** Bajo este escenario, este Tribunal tenía el deber de proteger el interés legítimo de los legisladores en que las leyes se ejecuten tal y como son aprobadas, asunto que aquí, lamentablemente, no ocurrió.

## IV

Por los fundamentos antes expresados, disiento y hubiera confirmado el dictamen tanto del Tribunal de Apelaciones como el del Tribunal de Primera Instancia. Ello, por entender que la actuación ultra vires del Ejecutivo infringió la doctrina de separación de poderes. Consecuentemente, debido a lo anterior, se provocó un daño claro y palpable a las prerrogativas y funciones constitucionales de los legisladores, lo cual viabilizó que

éstos, en su carácter individual y como representantes de la Cámara de Representantes, pudiesen vindicar su reclamo.


                              Luis F. Estrella Martínez
                                   Juez Asociado